WILLIAM HALLOWAY

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1899.*

1. CRIMINAL LAW—*when cross-examination is not error as tending to establish reputation of accused after the crime.* On a trial for murder, when witnesses introduced by the defendant to testify to his general reputation for peaceableness are asked, on cross-examination, whether they knew anything about his reputation for five or six years before the trial, their answer that they did not is not prejudicial, as tending to establish a reputation after the homicide, which occurred four years before the trial.

2. SAME—*when cross-examination of accused as to his past life is not error.* The court may permit an accused person, after testifying in his own behalf, to be cross-examined as to matters already in evidence respecting his previous association with a disreputable woman.

3. SAME—*when exclusion of testimony of witness at coroner's inquest is proper.* The testimony of a witness given at the coroner's inquest is properly excluded, when offered by the defense at a murder trial, where no foundation was laid therefor and the witness was allowed to answer whether he testified to a certain thing at the inquest, which answer is not contradicted by the People, who did not introduce any of the testimony given before the coroner.

4. SAME—*instructions for People in a murder trial may be framed on theory that the killing was murder.* Instructions for the People, consisting mainly of statements in the language of the statute and correct as propositions of law, are properly given in a murder trial though framed on the theory that the killing was murder, where the evidence tends to establish such theory, and the jury are fully informed, in other instructions, upon the question of manslaughter.

5. SAME—*instruction that accused must "satisfactorily" rebut People's case is ground for reversal.* An instruction that when the killing is proved the burden of proof is cast upon the defendant to "satisfactorily" establish his defense, imposes a higher degree of proof than is required by law and is prejudicial error.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

OSSIAN CAMERON, for plaintiff in error.

E. C. AKIN, Attorney General, CHARLES S. DENEEN, and HAYNIE R. PEARSON, for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On October 4, 1892, Benjamin F. Holmes lived in the second story of a house at 68 Polk street, in the city of Chicago, with a woman and her two children, which she had before she met him. Holmes and the woman lived in the assumed relation of husband and wife but had not been married. In the rear of the room occupied by them was the room of Grace Burns. Late that night plaintiff in error, William Halloway, who had been with a drum corps parading the streets and beating a drum for a political party, came to this house in search of Kittie Walker, a woman of the town, with whom he had been keeping company. She was in Grace Burns' room, but Halloway was told that she was not there. Afterward, during that night, at about one o'clock A. M., Halloway returned and came up the stairs still searching for the woman. Holmes had returned shortly before that time from his work, which was that of a cook in a restaurant, and he forbade Halloway coming up-stairs, and told him that he did not want him making a disturbance, and the vilest language was used by both the men. The woman, Kittie Walker, came out of the room where she was and Halloway went down the stairs. Holmes, in company with Ida Pope, a young girl, one of the daughters of the woman with whom he lived as his wife, followed down stairs to the sidewalk, where the defendant was standing. The woman, Kittie Walker, also went down the stairs. Holmes held in his hand a stick which had a hole in it, with a string through it which went around his wrist. About the time that he reached the sidewalk Halloway shot him and he died on the way to the hospital. Halloway fled, but returned to Chicago in September, 1896, where he was apprehended in company with Kittie

181—35

Walker, and was tried at the November term, 1896, of the criminal court of Cook county upon an indictment charging him with the murder of Holmes. He was found guilty of murder and sentenced to the penitentiary for the term of twenty-five years.

The defendant examined several witnesses as to his general reputation for peaceableness prior to the homicide, and complaint is made that the court permitted the State's attorney to cross-examine these witnesses as to such general reputation covering a period subsequent to the offense. The homicide occurred four years before the trial, and the questions objected to were whether the witnesses knew anything about his reputation for five or six years before the trial. The answers elicited were, that they did not; that they had lost trace of him five or six years before, and that they did not know what his general reputation had been during that period. This cross-examination showed that for a year or two before the homicide they knew nothing about him or his reputation. It did not tend to establish a reputation, either after the homicide or arising out of it, but merely developed the fact that the witnesses who said his reputation was good knew nothing about it at the time of the killing or some time before, and it was entirely proper.

The next complaint is, that the defendant, on his cross-examination as a witness, was compelled to testify to matters which had no bearing on the issue but could only disgrace and prejudice him. Being a witness, the defendant was subject to the same test as might be applied to any other witness. The cross-examination complained of merely related to his relation with the woman, Kittie Walker. It already appeared that he associated with disreputable characters and that his course of life was bad, and his relations with her were already in evidence. No harm resulted to him from the ruling.

The defendant also alleges as error that the court refused to permit him to introduce in evidence the testimony

of George Pope before the coroner's jury, at the inquest. Pope was asked, on his cross-examination, if he did not testify to a certain thing at the coroner's inquest, and he answered the question. He was not contradicted, and the People did not introduce the testimony given at the inquest, or any part of it. He had his say about it, and there was no foundation laid for introducing it, and it was properly excluded.

The first seven of the instructions given at the request of the People are said to be objectionable because they are given on the theory that the plaintiff was guilty of murder, and the form of verdict offered by the People is objected to on the same ground. These instructions were correct propositions of law and mainly statements in the language of the statutes. The evidence for the prosecution tended to establish that the killing was murder, and the People had a right to have the instructions given on that theory. The court, at the request of defendant, told the jury that they might find him guilty of manslaughter, and a form of verdict was given to be used in such case. Everything that the jury might rightfully do was explained by the instructions, and forms of verdict were given so that there is no ground for the complaint.

The eighth and ninth instructions for the People are claimed to assume the existence of material facts, but they are not subject to the objection and refer the jury to the evidence.

The verdict depended upon the credit which the jury should give to the witnesses. Those examined by the People testified to facts which clearly established the guilt of defendant, but there were witnesses in his behalf that he acted in self-defense, and he was entitled to have such evidence considered by the jury under proper rules. There was no controversy as to the killing, but the claim of the defendant was that it was justifiable, in the necessary defense of his person. The defendant had a right to have the evidence favorable to him go to the jury,

with proper instructions as to the quantum of evidence necessary to make out his defense. On that subject the court gave the eleventh instruction requested by the People, as follows:

"The court instructs the jury, as a matter of law, that if the jury shall find, from the evidence, beyond a reasonable doubt, that the killing of Benjamin F. Holmes has been proved as charged, then any defense which the defendant may rely upon in justification or excuse of the act, or to reduce the killing to the degree of manslaughter, it is incumbent upon the defendant satisfactorily to establish such defense, unless the proof thereof arises out of the evidence produced against him."

The statute declares that when the killing is proved, the burden of proof is cast upon the defendant to prove circumstances of mitigation or that justify or excuse the homicide, unless such proof arises out of the evidence for the People, but he is not required, when he assumes the burden of proof, "satisfactorily to establish such defense." The burden is on the People to prove the guilt of the defendant, and this instruction has been before the court repeatedly, and has uniformly been held to impose upon the defendant, when he assumes the burden of proof, a higher degree of proof than is required by the law. (*Alexander* v. *People*, 96 Ill. 96; *Smith* v. *People*, 142 id. 117; *Appleton* v. *People*, 171 id. 473.) The instruction having been repeatedly held to be erroneous and prejudicial error which requires a reversal, the assignment of error in giving it must be sustained.

Objections are made to other instructions given, but we find no error in them.

The judgment is reversed and the cause remanded to the criminal court of Cook county.

*Reversed and remanded.*