(No. 29801.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE ARCABASCIO, Plaintiff in Error.

*Opinion filed Nov. 20, 1946—Rehearing denied January 20, 1947.*

Carl A. Melin, of Cambridge, and James H. Andrews, Harper Andrews, and Campbell Andrews, all of Kewanee, for plaintiff in error.

George F. Barrett, Attorney General, and Reynolds M. Everett, State's Attorney, of Cambridge, for the People.

Mr. Justice Thompson delivered the opinion of the court:

Upon a jury trial in the circuit court of Henry county the defendant, Joe Arcabascio, was found guilty of the murder of his son-in-law, Claude Schuldt, and his punishment fixed at imprisonment in the penitentiary for a term of fourteen years. Motion for a new trial and in arrest of judgment was overruled and judgment entered upon the verdict. Defendant now seeks a reversal claiming the evidence was not sufficient to establish his guilt beyond a reasonable doubt and that prejudicial error was committed by the trial court in the giving of certain instructions, rulings upon the evidence and improper conduct of the State's Attorney.

The accused was an Italian immigrant, 58 years of age, who came to this country thirty-five years ago and was naturalized in 1927. He operated a shoe-repair shop in Cambridge but had not been able to work every day at his trade due to illness following a serious abdominal operation for the removal of cancer of the bowels. He was about five feet and nine inches tall and weighed around 160 pounds. Claude Schuldt was 30 years of age, weighed about 192 pounds and was around six feet in height.

The deceased, who had married the defendant's daughter, had caused considerable trouble in his own home by

reason of drinking, being quarrelsome and failing to support his wife and three children. According to the testimony of members of the police department and a number of prominent citizens of Orion, where Schuldt resided with his family for several years, he had a reputation as a violent, quarrelsome and fighting man. The same police officers and other outstanding citizens, both men and women, who were acquainted with the defendant, testified that his reputation was good for being a peaceable and law-abiding citizen.

The evidence discloses the deceased had recently returned from service and was living with his family in Orion. There he continued to pursue his drinking and quarreling, and the night before the killing, drove his family from their home. On the morning of October 16, 1945, which was the date of the killing, his wife went to Cambridge, the county seat, and asked the State's Attorney for a warrant, charging her husband with assault and battery. After the warrant was sworn out the deputy sheriff arrested Schuldt at a tavern in Orion and brought him to Cambridge. Later, after being fined, Schuldt went to Dick's Tavern, which was located a few doors from the defendant's shoe-shop. His wife at that time was at the shop where she had gone with her three boys and related to the defendant the drunken conduct of the deceased, including threats of deceased to kill the defendant. Around noon, as defendant's daughter and children left the shop, Schuldt came out of Dick's Tavern intoxicated, and threatened his wife on the street. He then proceeded to the shop of her father where he threatened to kill him and his daughter. Schuldt again went to Dick's Tavern and was standing at the bar with a partially consumed glass of beer before him when the defendant came in, spoke in a friendly manner to patrons there, and after a few words with the deceased, left with him going out the side door and down the steps to the sidewalk where the killing took place.

Defendant contends he went to the tavern for the purpose of getting his son-in-law to his shop to talk things over and to get him to make peace with his family and take them home. Defendant testified that immediately upon leaving the tavern, deceased struck him a blow on the head and grabbed him, tearing the buttons off his shirt, at which time, in defending himself, he used his shoe knife which he always carried in his pocket. This was the only blow struck by defendant and the deceased stepped back into the tavern where he fell on the floor and expired. According to the evidence, possibly a minute or less elapsed from the time they went out the side door until Schuldt fell back in through the door mortally wounded.

Two eyewitnesses testified for the People and it is admitted by the prosecution their testimony did not fully agree, but it is contended they were in substantial agreement.

Leora Bloom, one of the eyewitnesses, in her direct examination, testified the parties came out of the tavern going east; that she was going east and that the defendant came out of the side door of the tavern before she reached it; that the two men came out of the side door and went about two steps east; that the defendant had his arm around the other man's shoulder and immediately after they walked a couple of steps east the defendant grabbed the deceased by the ear and took his other hand and used his knife; that she was about fifteen to twenty feet away. From this it appears she was fifteen to twenty feet to the rear of the two men going in the same direction. On cross-examination she again testified they were all going east. Further in her testimony, however, she stated she was in front of them; that they turned around; and when asked if she looked back at them, replied, "No, I was facing them." She further testified that what happened in front of the men she could not see and that she did not hear anything said by either. When she was asked if they said anything or did not say anything, she answered, "I

didn't see or hear them." She testified that deceased was not as large as defendant; that he was smaller, smaller in height and not quite as tall as the defendant.

Harvey Robinson, the other eyewitness, a seventeen-year-old lad, testified that he was across the street lighting a cigarette just getting ready to get into his car when the men came out of the door of the tavern; that the younger man came out of the door first; that he was not six feet and one inch tall; that he was a small boy—not as tall as the defendant. He further testified that as the deceased and the defendant came out the young man was facing south and the old man right behind him; that they were standing right on the steps side by side both looking the same way when defendant used his knife.

As before observed, the defendant had testified that immediately upon leaving the tavern the deceased struck him a blow on his head and grabbed him tearing the buttons off his shirt, at which time, in defending himself, he used his shoe knife.

It is apparent there is conflict in the evidence as to which of the parties was the aggressor and the situation is not aided by the conflict in the testimony as offered by the eyewitnesses. We shall make no special comment upon what the evidence warranted the jury in finding upon that question. Their apparent discrepancy, however, would cast some doubt as to whether they were in position to see and hear everything that transpired in an occurrence that happened within seconds. The fact that they both testified the smaller man, which they testified was the one assaulted, was the first out of the door and that he was followed by the defendant who they testified was a larger man, casts some further doubt, as positive testimony was given by parties having a better opportunity to know, that the deceased was considerably taller and weighed more than the defendant. A reviewing court will not, however, substitute its judgment for that of the jury upon the evidence

and will not reverse a judgment of conviction simply because the evidence is conflicting. Where evidence in a criminal case is conflicting in its nature, it is highly essential, for a proper consideration of the facts by a jury, that the jury be correctly instructed. *People* v. *Edwards,* 389 Ill. 563.

Defendant contends that People's instruction No. 5 is erroneous in that it omits the element of self-defense. This was an instruction in the language of the statute giving the definition of murder and also instructing as to the meaning of express and implied malice. It is also contended that the instruction ignores the possibility of self-defense set up by the defendant. Defendant's objection that the instruction defines and dwells on the element of malice, whereas no express malice is shown, is of no force due to the fact that the instruction also defines implied malice. It is also urged it ignores the law of self-defense. We held in the case of *People* v. *Gibson,* 385 Ill. 371, that an instruction defining murder and malice is not erroneous in ignoring the theory of self-defense where other instructions are given covering that subject.

The defendant contends People's instruction No. 6, "The court instructs the jury that the law presumes that a person intends all the natural, probable and usual consequences of his acts; that when one person assails another violently with a dangerous weapon likely to kill, not in self-defense and not in a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible or involuntary, and the life of the party thus assailed is actually destroyed in consequence, then the legal and natural presumption is that death or great bodily harm was intended; in which case the law implies malice, and such killing would be murder," is abstract in character and assumes that the defendant's act was not in self-defense, and urges that the instruction naturally directs a verdict against the defendant. This instruction advised the jury

that "when one person assails another violently with a dangerous weapon likely to kill, not in self-defense and not in a sudden heat of passion caused by a provocation apparently sufficient * * * and the life of the party thus assailed is actually destroyed," then the legal and natural presumption is that death was intended, in which case the law implies malice and that such killing would be murder. The People insist that this act was not in self-defense. In the case of *People* v. *Popovich,* 295 Ill. 491, similar objection was made that an instruction ignored the defense of self-defense. The court there held the jury was properly instructed, as an examination of all instructions showed that the law of self-defense had been thoroughly given to the jury. The correctness of the instruction in the instant case depends upon whether or not an examination of all the instructions shows that the jury was properly instructed as to the law of self-defense.

Defendant objects to the first clause of People's instruction No. 7 and contends that the same is bad because it deprives the defendant of his claim of self-defense. The instruction, as given, is as follows: "The court instructs the jury, as a matter of law, that the words, 'malice aforethought' do not necessarily imply the lapse of a considerable time between the malicious intent to take life and the actual execution of that intent; whether the design to effect death was formed on the instant or had been previously entertained is immaterial, for the malicious killing, if proven by the evidence beyond a reasonable doubt, in either case is murder under the laws of this State. Provided the jury further believes from the evidence, beyond a reasonable doubt, that no circumstance existed excusing or justifying the act as having been done in self-defense as defined in these instructions."

The first clause of the above instruction has been condemned by this court in *People* v. *Spranger,* 314 Ill. 602, and *People* v. *Durand,* 307 Ill. 611. It is clear this clause,

standing alone, was for the purpose of informing the jury that no particular time need intervene between the formation of the intention and the act to constitute malice aforethought, and whether the design to effect death was formed on the instant or had been previously entertained is immaterial, for the malicious killing. Proof of such killing, by the evidence beyond a reasonable doubt, was in either case murder under the laws of the State. Without the proviso, which is the last clause of this instruction, it would be erroneous as ignoring the law of self-defense, and the proviso, while not ignoring the law of self-defense, depends upon other instructions to define the law as to what circumstances would excuse or justify the action. It can therefore be readily seen that the validity of this instruction would depend entirely upon the accuracy of other instructions, not only defining what constitutes self-defense, but further, that in setting out the terms constituting self-defense, it must be given to the jury in such way as to not confuse or mislead them. As was said in *People* v. *Gibbs,* 349 Ill. 83, where the court there approved a similar instruction, it did so with the qualifications that the instruction in the case takes into consideration all of the defenses which the defendant urged or which might have been interposed for him and that it was therefore not improperly given. From this it can readily be seen that the court recognized the limitation of this instruction and the necessity for other instructions which clearly and accurately defined his defenses. The clearness of such instruction, it is thus seen, depends upon the accuracy of instructions to which the defendant is entitled.

It is urged that People's instruction No. 9 erroneously placed upon defendant the burden of satisfactorily establishing justification. The instruction, as given, is as follows: "The court instructs the jury that if the jury shall find from the evidence that the killing of Claude Schuldt has been proved as charged, then it is incumbent on the

defendant, Joe Arcabascio, satisfactorily to establish any defense which he may rely upon in justification or excuse of the act, unless the proof thereof arises out of the evidence produced against him."

The first sentence of the instruction does not require the State to prove the defendant guilty of the charge beyond a reasonable doubt but merely requires that the killing of Claude Schuldt be proved "as charged." The instruction also specifically states that the burden is on the defendant specifically naming him to satisfactorily establish any defense which he may rely upon in justification or excuse of the act. We do not think this is a correct instruction and it should not have been given. No proof was necessary to justify defendant unless the charge of killing was shown beyond a reasonable doubt. The instruction states that it is incumbent upon Joe Arcabascio, satisfactorily to establish any defense which he may rely upon in justification or in excusé of the act. This instruction undoubtedly imposed upon the defendant a greater burden than he must assume under the law. As the jury might well understand from the use of the words "satisfactorily to establish such defense" that the defendant was required to go beyond the proof ordinarily required in a case of this character. Similar instructions have been before this court and have always been condemned. In the case of *People* v. *Durand,* 307 Ill. 611, a similar instruction was given and the court, at page 620, said: "This is purely an abstract proposition of law, which gives the jury no correct idea of the law of the case or as to how much proof on the question of self-defense is necessary to entitle the defendant to a verdict of not guilty. The law clearly is that the burden of proof never shifts to the defendant no matter what his defense may be, and where the defense is self-defense, it is sufficient if his evidence on self-defense, together with all the other evidence in the case, creates in the minds of the jury a reasonable doubt of his guilt, and there was no instruc-

tion given for the People that recognizes this as the law. Besides, some of the instructions given for the People on the law of self-defense are erroneous. The above section of the statute should not be given as an instruction in any homicide case. Had all the other instructions bearing on self-defense been accurate, the giving of this instruction would not necessarily be reversible error, but the giving of a like instruction, with other inaccurate instructions on the law of self-defense, has been held by this court to be reversible error where the defense was simply and only self-defense. (*People* v. *Willy*, 301 Ill. 307.)"

It is true that a number of instructions were given on the various phases of self-defense but to analyze each and every one of them for strict accuracy would unnecessarily extend the opinion. It is apparent there were entirely too many instructions given on this phase of the case when the facts narrowed it to who was or was not the aggressor. It is true a reviewing court will not reverse a judgment of conviction simply because the evidence is conflicting, but where such is the condition of the evidence it is necessary that the jury be accurately instructed and if the reviewing court is of the opinion some of the instructions were erroneous and prejudicial to the defendant, the judgment will be reversed. (*People* v. *Bradley*, 324 Ill. 294.) We are of the opinion in the instant case that what took place was so close in point of time that this instruction, so often given and condemned, could not be considered as harmless. We agree that the giving of instructions like the two above will be sustained where other instructions on the law of self-defense are accurate, but the practice ought not to be resorted to especially in a case where the facts exist as shown by the record here. In the case of *Halloway* v. *People*, 181 Ill. 544, a similar instruction was discussed by the court and it was there said, "The statute declares that when the killing is proved, the burden of proof is cast upon the defendant to prove circumstances of mitigation

or that justify or excuse the homicide, unless such proof arises out of the evidence for the People, but he is not required, when he assumes the burden of proof, 'satisfactorily to establish such defense.' The burden is on the People to prove the guilt of the defendant, and this instruction has been before the court repeatedly, and has uniformly been held to impose upon the defendant, when he assumes the burden of proof, a higher degree of proof than is required by the law. (*Alexander* v. *People,* 96 Ill. 96; *Smith* v. *People,* 142 Ill. 117; *Appleton* v. *People,* 171 Ill. 473.)" We cannot say, under the facts in this case, that the instruction did not mislead the jury.

Defendant objects to instruction No. 11, given at the instance of the People. This instruction instructed the jury in regard to the law of self-defense and the defendant contends that the instruction contains an assumption of disputed facts. This instruction has been before this court previously and seems to have been approved in the case of *Morello* v. *People,* 226 Ill. 388, and *People* v. *Hatcher,* 334 Ill. 526. Defendant insists that the most harmful part of the instruction is in the last statement wherein it sets forth "if you believe from the evidence, beyond a reasonable doubt, that he cut the throat of and killed Claude Schuldt at a time when he had no reasonable cause to apprehend the approach of immediate or impending injuries to himself \* \* \*." Defendant urges that this language submitted to the jury the question as to whether there was apparent danger to the defendant, whereas the question was what the defendant believed as a reasonable man.

We held in the case of *People* v. *Andrews,* 327 Ill. 162, that the giving of a similar instruction was warranted where there is evidence to support the theory of the prosecution that the defendant was the aggressor. The People contend here that there can be no doubt in this case that the plaintiff in error was the aggressor, and therefore the

instruction was correctly given. We are of the opinion that in a case as close as this on the facts as to who was the aggressor, the instruction should have further informed the jury on the question as to the danger as it appeared to him acting as a reasonable person. The true test is what the defendant believed was necessary, acting as a reasonable person, not whether the jury believed from the evidence that it was necessary or apparently necessary.

Defendant objects to People's instruction No. 13 and contends that this instruction singles out items of evidence and submits the right of self-defense to the judgment of the jury. This instruction advised the jury that if it believed from the evidence that the general reputation of the deceased for violence and quarrelsomeness was bad, and that prior threats had been made by deceased to the defendant, that any or either of these things would not authorize an acquittal when at the time of the killing there was no necessity, real or apparent, to the defendant acting as a reasonable person under the circumstances in order to save himself from death or great bodily harm. Defendant insists that the test is not whether the jury believed the facts justified the slaying of the deceased in self-defense, but whether, under the evidence, the defendant honestly believed that he was in such danger or apparent danger to require the killing of his opponent. This instruction does not seem to contain the objection claimed for it by the defendant. It is not left for the jury to determine whether it was necessary for the defendant to kill the deceased. It is still left to be determined whether or not the defendant acted as a reasonable man under the circumstances in order to save himself from death or great bodily harm. With other instructions as given, this seems to be a correct statement of the law.

Defendant objects to instruction No. 19, given on behalf of the People, which is as follows: "The court instructs the jury that if the jury, after considering all the

evidence in this case, find from the evidence that any witness has, or witnesses have, knowingly, wilfully and corruptly testified falsely to any fact material to the issue in this case, they have the right to entirely disregard the testimony of such witness or witnesses, except in so far as his or their testimony is corroborated by other credible evidence or by circumstances in evidence."

This instruction has repeatedly been condemned by this court for the reason that it leaves to the jury the determination of what are the material facts. We discussed fully a similar instruction in the case of *People* v. *Wells,* 380 Ill. 347, where, at page 358, we said: "Instructions with this and similar wording have been before this court many times. Undoubtedly the rule is, that where this instruction is given, other instructions should be given defining the issues, so as not to throw the burden on the jury of ascertaining what are and what are not material issues of fact. Such an instruction has been many times condemned and held to be improper as it leaves the jury to determine the legal question as to what are material facts or essential elements of the crime charged." Even if it could be determined with reasonable assurance that other instructions properly presented all the material facts, we hardly see how it could do anything else except confuse the jury. In the many instructions given, such as were offered in this case, we hardly see how the jury could search through the instructions to determine what the material facts were as presented by such an instruction. The People attempt to justify this instruction by pointing out the broad statement that the material facts of the case are defined by instructions 4, 5, 6, 7, 8, 21, 22, 29 and 48, part of which were given on behalf of the defendant and the others for the People. We hardly see how the jury could be expected to analyze all of these instructions to determine whether or not it could properly apply the law as directed to it by the instruction. This statement itself

emphasizes the confusion in the giving of such instruction. Where the facts are so close as to who was the aggressor an instruction that requires the jury to search through many instructions in order to determine the material facts in the case should be avoided; and while we still adhere to what we said in the case of *People* v. *Wells,* 380 Ill. 347, concerning this instruction, we are of the opinion, under the facts in this case, it was of no benefit and could only confuse the jury to the prejudice of the defendant.

Defendant urges it was error to strike his statement that he struck Schuldt in self-defense. The controversy arose when the defendant was asked on his examination, "Why did you strike him?" The answer was, "I was afraid he was kill me and I am an old man and I try to defend myself. I was a man that have an operation——." On motion by the People the court ruled that the answer be stricken and the defendant contends that this ruling of the court was reversible error and deprived him of his lawful right to explain his intention in striking the deceased. It will, of course, be observed that it was highly improper to strike the entire answer, and while that part in which the defendant testified about an operation should have been stricken, his answer that he was afraid and that he tried to defend himself was very important; and even though he might have explained in other parts of his testimony his intention in striking the deceased, the effect it might have had upon the jury when he answered that he was afraid he would be killed and that he was endeavoring to defend himself, which was ruled out by the court on motion to strike, might have conveyed the impression to the jury that these elements were not proper to be considered in his defense.

The crux of this case was whether or not at the particular time the danger was so real or apparent to him, acting as a reasonable person, that he thought it necessary to defend himself, and, hence, the importance of his an-

swer. The motion to strike should have been limited and it was improper to strike the entire answer.

Defendant contends that it was error to refuse certain offers of proof made by the defendant concerning events preceding the killing. There were thirteen separate offers, which, in the main, concerned acts of the deceased to which the defendant was not a party. Part of the proof tendered was that concerning the hearing before a justice of the peace in which the deceased entered a plea of guilty to assault and battery upon his wife and was fined $25 and costs. Such offers were made and objected to on the ground they were immaterial in not bearing on any issues in the case and did not involve the defendant. We do not think the court erred in sustaining the objection to this proof. The same can be said as to the tender of a page from the docket of the justice of the peace, as it was immaterial.

Certain other objections were made to the testimony of the justice of the peace as to conversation of the deceased which did not involve the accused and only raised collateral issues, which were properly sustained. Certain other objections were sustained when defendant offered to prove by a witness as to certain conversation with the defendant at the east door of the county jail about noon on October 16, 1945, when the defendant had called on the sheriff. We think this was immaterial and it was properly sustained.

The last offer of proof which was possibly of the greatest importance was when the defendant offered to prove by his daughter, Rose Schuldt, while she was on the stand, that she left the courthouse at 11:30 A.M. on October 16, 1945, with her three boys, went to her father's shop and told him she had been to a trial before a justice of the peace; that Claude Schuldt, her husband, had entered a plea of guilty to assault and was permitted to leave the courtroom; that he was in a high temper, under the influence of liquor and in an ugly mood; that he said the night before that he "expected to kill all the wops," includ-

ing his wife, her children and the defendant. Objection was made on the ground that the proof was immaterial and the threats were all in. The court in his ruling said. "The evidence in regard to his temper, the fact that he was under the influence of liquor and made the threats is admissible and as I understand the record, that evidence is already in. As to the balance of the offer the objection is sustained and the offer is denied." The rule seems to be that if it appears that there was any act calculated to induce a belief of danger to life or bodily harm the threats should be admitted. It is apparent that the court admitted the testimony which would calculate to induce a belief of danger to the defendant and admitted all that could have any relation to the killing.

Defendant urges that evidence should have been admitted of the conversation in which threats were made by the deceased upon his wife and children. Under the evidence in this case there could be no serious contention that the defendant acted at the time of the killing in defense of his daughter, the deceased's wife, as she was not present at the time of the killing and threats to her were not proper to be introduced in evidence. In view of all the facts in this case, such threats were immaterial on the question of self-defense. It is unnecessary to consider other questions raised.

Summing up, it is our judgment the defendant is entitled to have the facts passed upon by another jury. Certain improper instructions and matters pertaining to evidence, which we have pointed out, will be obviated in a new trial.

For the errors pointed out, the judgment of the circuit court of Henry county is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*