Kenneth S. Ernhart, Appellee, v. Elgin, Joliet and Eastern Railway Company, Appellant.

Gen. No. 44,465.

Opinion filed March 16, 1949.   Rehearing denied April 6, 1949.   Released for publication April 11, 1949.

KNAPP, CUSHING, HERSHBERGER & STEVENSON, of Chicago, for appellant; HARLAN L. HACKBERT, of Chicago, of counsel.

JOSEPH D. RYAN and LOUIS P. MILLER, both of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action under the Federal Employers Liability Act (45 U. S. C. A. § 51 et seq.). The verdict was for plaintiff for $40,000 and judgment was entered upon the verdict. Defendant appealed directly to the Illinois Supreme Court. That court transferred the case here (399 Ill. 512), because the validity of a statute was not involved so as to warrant the direct appeal.

Plaintiff, a resident of Indiana, was employed by the defendant as a switchman in 1937. In February 1940 he was injured when a stirrup on a freight car gave away and he was thrown to the ground. He returned to work after two months. On November 14, 1944, plaintiff was conductor of a switching crew engaged in moving freight cars in the railroad yard at the Gary plant of the Carnegie Steel Company. The crew was working the 4 P. M. to midnight shift. Their work consisted of setting empty cars in the Steel Company's coke oven stations, removing the cars when loaded, weighing them and setting them either in the "new yard" or Yard B within the plant enclosure.

From these yards the loaded cars were moved either to the blast furnaces in the Gary plant or to defendant's Kirk Yards for later movement to the Steel Company's South Chicago blast furnaces.

On November 14th plaintiff's crew had moved, weighed and set two "cuts" of cars. About 10:30 P. M. they were moving a third "cut" westward to Yard B from the scales. Plaintiff, after communicating a signal to the engineer, attempted to board one of the cars. The stirrup broke, he fell to the ground, struck the lower part of his spine on a rail and was injured.

The car from which plaintiff fell and the other cars composing the third "cut" were to be taken to the Gary furnaces in an intrastate movement. It is disputed whether an earlier cut moved by plaintiff's crew was to be taken to South Chicago in an interstate movement. It is conceded that plaintiff's crew on previous days handled cars destined for the South Chicago furnaces. The jury answered in the affirmative an interrogatory whether "part or all of plaintiff's duties directly or closely and substantially" affected interstate commerce. It answered in the negative an interrogatory whether plaintiff was guilty of contributory negligence. Defendant does not contend that any of the verdicts are against the manifest weight of the evidence.

Defendant contends that plaintiff's injury does not come within the Federal Employers' Liability Act as amended in 1939. Plaintiff disputes this contention and claims that even if defendant were correct the judgment should, nevertheless, be sustained under plaintiff's common law right for violation of the Federal Safety Appliance Acts.

Defendant is a highway of interstate and intrastate commerce and, although the car from which plaintiff fell was not at that time being used in interstate commerce, it was subject to the requirements of the

Federal Safety Appliance Acts, *Texas & Pacific Ry. Co. v. Rigsby*, 241 U. S. 33; *Tipton v. A. T. & S. F. Ry.*, 298 U. S. 141. Section 11 of the F. S. A. A. requires secure stirrups. Defendant says that the question of plaintiff's common law action for violation of section 11 was not presented by the complaint or submitted to the jury.

█  We need not speculate whether the complaint stated a common law action. The jury was not instructed upon the common law theory. If instructions Nos. 1, 13 and 15 were designed for the purpose, they did not fulfill the purpose. No. 1 contained the allegations of the complaint; No. 13 is an abstract statement of the liability of common carriers under the F. E. L. A. for injuries through negligence of the carrier or its agents, etc. or as a result of negligence in equipping cars, etc. No. 15 erroneously states—assuming a common law theory—that the question of plaintiff's contributory negligence is immaterial. *Tipton v. A. T. & S. F. Ry. Co.* Furthermore, this instruction erroneously —assuming a common law theory—required a showing that plaintiff's duties directly, etc. affected interstate commerce. *Moore v. C. & O. Ry. Co.*, 291 U. S. 205.

██  The complaint presented a claim under the F. E. L. A., based on a violation of the F. S. A. A. *Lilly v. G. T. W. R. R.*, 317 U. S. 481; *Moore v. C. & O. Ry. Co.* There is no question of contributory negligence in that kind of case. Section 53, Chap. 2, Title 45, U. S. C. A.; *Moore v. C. & O. Ry. Co.* Defendant admitted, in its answer, that it is an interstate railroad and at the trial that the stirrup on the car was defective. The necessity of proving negligence was, therefore, obviated because Congress intended to treat a violation of the F. S. A. A. as negligence *per se. Moore v. C. & O. Ry. Co.* There is no point raised that the implicit finding by the jury, that the defective stirrup was the proximate cause of the injury, was against the manifest weight of the evidence. This leaves the sole

question whether plaintiff was engaged in interstate commerce within the meaning of the 1939 amendment to the F. E. L. A. when he was injured.

Instruction No. 14 told the jury that defendant could not be liable unless part of plaintiff's duties "at the time of the accident" were in the furtherance of or directly, etc. affected interstate commerce. Instruction No. 1 stated, "part or all of his duties on the day," thus limiting the time to the day of the accident. Instruction No. 15 and the special interrogatory on plaintiff's duties, placed no time limit. Instructions Nos. 1, 14 and 15 are peremptory. There was no contrariety in the evidence of the nature of the train movement at the time of plaintiff's injury. It was intrastate. Had the jury followed instruction No. 14, presumably it would have returned a verdict for defendant. We assume the jury followed instruction No. 1 or 15. If the law places no time limit on the liability, or "if the day" of the accident is not an improper limit, defendant cannot consistently complain that the giving of the corresponding instruction No. 15 or 1, was prejudicial error.

The original F. E. L. A. covered any person suffering injury "while he is employed by such carrier in such commerce." That language caused the difficulty in interpreting the Act. Prior to the 1939 amendment it was said to mean any employee "at the time of injury" engaged in interstate commerce or work so closely related as to be a part of it. *Shanks v. D. L. & W. R. R.,* 239 U. S. 556. This rule was steadily adhered to. *C. & N. W. Ry. v. Bolle,* 284 U. S. 74. The 1939 amendment was designed to solve the difficulty. It was to explain what employees shall be considered as being employed by "such carrier" in "such commerce." It includes "any employee . . . any part of whose duties . . . shall be the furtherance of interstate . . . commerce; or shall in any

way directly, closely or substantially affect such commerce . . . ."

Defendant points out that the word, "while" in the original Act was not disturbed by the amendment. It claims that the judicial interpretation of that word under the original Act, therefore, still obtains. This word was construed to mean "at the time" in the pre-amendment interpretations. Our Supreme Court in *Thomson v. Industrial Commission*, 380 Ill. 386 supports the defendant's claim. It is true that the amendment did not disturb the word "while." We agree that the word should receive the same construction now as it did prior to the amendment unless the context of the original and amended Act together modify the earlier construction of the word. *People v. I. C. R. R.*, 314 Ill. 373. What is the result of applying the interpretation contended for by defendant to the facts before us? Were any part of Ernhart's duties "at the time" of injury in furtherance of, or did any part of his duties then directly, etc. affect interstate commerce. Does this mean the general duties under his contract of employment or the work he was doing at the moment of injury?

It is not possible to break up plaintiff's duties at the moment of injury. His duty then was presumably to board the car. It is inconceivable that part of a switchman's duties at a given moment can be interstate and part intrastate. The work of a switchman does not differ with the type of commerce. Switching consists of several operations such as signaling, boarding and unboarding cars or trains, locking, unlocking and throwing switches and coupling and uncoupling cars. These operations cannot be broken up so that one part is in interstate and one part in intrastate commerce. Plaintiff, under the interpretation sought by defendant could not be included in the amendment unless at the moment of injury he had been

boarding an interstate car. He was that well off under the Act before amendment.

The amendment was intended to obviate the difficulty and danger encountered by employees in determining whether, when injured, they were engaged in interstate or intrastate commerce. *Edwards v. B. & O. R. R.,* 131 Fed. (2) (7th Cir.) 366; *Shelton v. Thomson,* 148 Fed. (2) (7th Cir.) 1; *Ermin v. Penn. R. R.,* 36 Fed. Supp. 936; *Agostino v. Penn. R. R.,* 50 Fed. Supp. 726. Senator NEELEY in reporting the amendment to the Senate said it referred especially to switchmen who were engaged intermittently in interstate and intrastate commerce several times during a single tour of duty. We think the Federal courts take this view of the amendment. Statements of the courts in the cases noted so indicate. No federal case has been cited where an employee has been injured under nearly the same circumstances as plaintiff. In the *Edwards* case the employee was repairing the boiler of an engine temporarily withdrawn from interstate service. In the *Shelton* case the employee operated a crane lifting car wheels to be used on cars in both types of commerce. In the *Ermin* case the employee was in an intrastate movement transporting interstate engines. In the *Agostino* case the employee was working on a new alignment of a track used in both types of commerce. In *Zimmermann v. Scandrett,* 57 Fed. Supp. 799, the employee was a maintenance man in a round house which was largely devoted to housing interstate engines. In *Patsaw v. K. C. S. Ry.,* 56 Fed. Supp. 897, the employee was a member of a section crew and was injured while driving a private automobile to a town to obtain necessary tools for the car. Defendant concedes that those cases come under the amendment.

Defendant admits that the 1939 amendment broadened the Act, but argues that the Illinois Supreme Court's interpretation in *Thomson v. Industrial Commission* is correct. On this question we are bound

by the decisions of Federal courts instead of the Illinois Supreme Court. *Day v. C. & N. W. Ry.*, 354 Ill. 469; *C. & O. Ry. v. Kuhn*, 284 U. S. 44; *Bailey v. Central Vermont Ry.*, 319 U. S. 350.

We think the amendment refers to the general duties of employment, and not to the isolated work, at the time of injury. Under this interpretation it is unnecessary to attempt the division of an immediate operation of a workman into parts so as to determine whether any part was in interstate commerce. It is believed that approximately 82 percent of the total of industrial injuries and deaths occurring in interstate rail transportation, arises out of so-called acts of interstate transportation, leaving some 18 percent occurring in intrastate acts. 28 Ill. Law Rev. 587, 602. We think our interpretation is fairer to employees who should know from the terms of their general employment whether they have the protection of the Federal Acts. It is fairer to the employers for the reason that they shall have the same knowledge. It is not stretching the power of Congress to unconstitutional length, any more than the Supreme Court's interpretation of the F. S. A. A. in *T. & P. Ry. v. Rigsby*, 241 U. S. 33.

We are of the opinion that as a conductor of a switching crew engaged interchangeably in interstate and intrastate train movements part of plaintiff's duties was in furtherance of or directly or closely and substantially affected interstate commerce. He was, accordingly, employed in interstate commerce and was injured while so employed. We think this conclusion is consistent with the decisions in *Edwards v. B. & O. R. R. Co.*, 131 Fed. (2) 366; *Shelton v. Thomson*, 148 Fed. (2) 1; *Kach v. Monessen Southwestern Ry. Co.*, 151 Fed. (2) (3rd C. C. A.) 400. There was no error prejudicial to defendant in the giving of instructions Nos. 15 or 1, nor in the giving of the special interrogatory with respect to plaintiff's duties. The interrogatory on contributory negligence was not material

and should not have been given. We do not see that defendant was harmed by this error.

Complaint is made of instruction No. 12, which told the jury that if they believed any witness had knowingly testified falsely to any material fact, etc. We think instructions Nos. 1 and 15 fairly define the material issues and that *McManaman v. Johns-Mansville Corp.*, 400 Ill. 423, 81 N. E. (2) 137 and not *People v. Arcabascio*, 395 Ill. 487, applies. There was no reversible error in the giving of this instruction. We see no merit in the complaint made that the court erred in refusing to permit Dr. Turner to testify to his conclusion after an examination of plaintiff early in 1945 at the request of a former attorney for plaintiff. The doctor was subpoenaed to refute an unwarranted statement by plaintiff's attorney, that the doctor had examined plaintiff at defendant's request. There was ample medical testimony in the record without the testimony of Dr. Turner. We see no prejudice to the defendant because of the ruling.

Defendant contends the court committed error in admitting certain of plaintiff's X-ray pictures which bore pencil marks. It is clear from the testimony of the doctors that the pencil marks did not obscure or in any way interfere with interpretation of the X-rays. We see no merit to this contention. Complaint is made of prejudicial argument on the part of plaintiff's attorney before the jury. This contention was one of the grounds urged by defendant in support of the motion for a new trial. The trial court denied the motion. We have read the arguments of both attorneys in full in the record. While both contain heat we cannot say that the defendant was prejudiced.

It is claimed that the verdict is excessive. Medical experts testified on behalf of each party. Both parties introduced X-ray pictures of plaintiff's back in evidence. There were interpretations and cross-interpretations of the X-rays. The medical experts

gave contrary views of the same X-ray pictures. This left the question of correct interpretation to the jury. We think this case bears out the statement of one of the doctors that the interpretation of X-rays is not an exact science. The jury could be justified in finding that as a proximate result of the accident there was an injury to the intervertebral disc between the sacrum and the fifth lumbar vertebra and that plaintiff was faced with the alternative of wearing permanently a leather brace from his shoulders to his sacroiliac or face a difficult operation which, if successful, would ankylose his lower back. Plaintiff was 35 at the time of the accident. He could not return to work as switchman if the facts are as given by his witnesses. Plaintiff argues that he has already lost $10,000 in salary. An operation on his back would cost about $1,500. The purchasing value of a dollar has been greatly reduced. For these reasons we do not feel that we should disturb the verdict as excessive.

For the reasons given the judgment is affirmed.

*Affirmed.*

BURKE, P. J., and LEWE, J. concur.