(No. 31163

KENNETH S. ERNHART, Appellee, *vs.* ELGIN, JOLIET AND
EASTERN RAILWAY COMPANY, Appellant.

*Opinion filed March 22, 1950—Rehearing denied May 15, 1950.*

KNAPP, CUSHING, HERSHBERGER & STEVENSON, of Chicago, (HARLAN L. HACKBERT, of counsel,) for appellant.

JOSEPH D. RYAN, and LOUIS P. MILLER, both of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

In an action in the superior court of Cook County under the Federal Employers' Liability Act, (45 U.S.C.A. par. 51 *et seq.*), the plaintiff, Kenneth S. Ernhart, recovered a

judgment of $40,000 for personal injuries suffered when defective equipment allegedly caused him to fall from a train of the defendant, Elgin, Joliet and Eastern Railway Company, which was being operated in train yards at Gary, Indiana. Claiming that plaintiff's employment at the time of the accident did not bring him within the provisions of the Federal Employer's Liability Act, defendant appealed to this court contending that the construction of the Federal statute involved created a constitutional issue of such nature as to give this court jurisdiction on direct appeal. We held that it did not, and transferred the cause to the Appellate Court for the First District. (*Ernhart* v. *Elgin, Joliet and Eastern Railway Co.* 399 Ill. 512.) That court, after construing the statute to include plaintiff's employment, affirmed the judgment of the superior court. (387 Ill. App. 56, 84 N.E. 2d 868.) On petition of the defendant, we have granted leave to appeal for further review.

The facts and pleadings relating to the cause have previously been detailed in the opinions reported in 399 Ill. 512 and 337 Ill. App. 56. However, some repetition of them is necessary here. On November 14, 1944, plaintiff, an Indiana resident, was conductor of a switching crew engaged in moving freight cars in the railroad yards of the Carnegie Steel Company at Gary. Their operations consisted of spotting empty cars at coke oven stations, removing and weighing them when loaded, and then shunting them to one of two yards in the plant area. From the yards the cars were eventually moved either to blast furnaces in the Gary plant, an intrastate movement, or to defendant's "Kirk Yards" for later removal to the steel company's furnaces at South Chicago, Illinois, an interstate movement. On the above date, the crew had moved and weighed two cuts of cars, and, about 10:30 P.M. were moving a third cut when a defective stirrup broke as plaintiff sought to board a car. He was thrown to the ground and injured.

The car from which plaintiff fell and all other cars in the third cut were to be taken to the Gary furnaces. There is dispute as to whether one of the earlier cuts of that night was to be taken to South Chicago, but it is not denied that plaintiff and his crew had, on previous days, switched cars destined for the South Chicago furnaces. From all the facts it is apparent that plaintiff operated interchangeably in intrastate and interstate movements, as his duties demanded. In response to an interrogatory, the jury affirmatively found that "part or all of plaintiff's duties directly or closely and substantially affected interstate commerce."

The question to be answered from the foregoing facts, and the principal issue presented by this appeal, is whether the plaintiff, at the time of his accident, was engaged in interstate commerce within the purview of the Federal Employers' Liability Act as amended in 1939. An examination of the historical background of the act shows that Congress first attempted to legislate in the field in 1906. In the first employers' liability case, (*Howard* v. *Illinois Central Railroad Co.* 207 U.S. 463, 52 L. ed. 297,) the 1906 act was declared unconstitutional because it attempted to regulate the liability of interstate carriers for any injury to an employee, even though his employment had no connection with interstate commerce. The second and present act was enacted in 1908 and provided in part: "Every common carrier by railroad while engaging in commerce between any of the several States and Territories, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," etc. (45 U.S.C.A. par. 51.) In considering the new act in the second employer's liability case, (*Mondou* v. *New York, New Haven and Hartford Railroad Co.* 223 U.S. 1, 56 L. ed. 327,) the Supreme Court said: "The present act, unlike the one condemned in Employers' Liability cases, (*Howard* v. *Illinois Central Railroad Co.* 207 U.S. 463,

52 L. ed. 297, 28 Sup. Ct. Rep. 141,) deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employees while engaged in such commerce."

On the basis of this interpretation, subsequent decisions of all courts limited the application of the act to cases where the injuries were sustained while the employee was actually engaged in interstate commerce, or in work so closely related to it as to be practically a part of it, leaving redress under the State laws open in event the employee was injured otherwise. The determination of what duties constituted interstate commerce, or what duties were too remote from it, led to many close and borderline decisions as to whether the State or Federal law should apply. The problem created was recognized and discussed in the leading case of *Shanks* v. *Delaware, Lackawanna and Western Railroad Co.* 239 U.S. 556, 60 L. ed. 436. Employees and employers alike were confused and uncertain as to the protection and remedies afforded them. Seeking to clarify the situation, Congress, in 1939, added the following language to the above-quoted section of the 1908 Act: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." 45 U.S.C.A. par. 51.

Up to the present time, as far as we are aware, there has been no decision by the United States Supreme Court discussing either the validity or construction of the 1939 amendment. That court has, however, in two subsequent cases, *McLeod* v. *Threlkeld,* 319 U.S. 491, 87 L. ed. 1538, and *Overstreet* v. *North Shore Corporation,* 318 U.S. 125, 87 L. ed. 656, referred to the undesirable confusion which

characterized the application of the Federal Employers' Liability Act and prompted the 1939 amendment.

The construction of the amendment first came before this court in 1942, in the case of *Thomson* v. *Industrial Com.* 380 Ill. 386. There one Stoll, a railroad yard patrolman, was injured while ejecting trespassers. It appeared that part of his duties was to inspect interstate cars for broken seals and hot boxes, and to observe the condition of the tracks over which interstate commerce ran. The railroad defended against his claim for workmen's compensation on the ground that since the 1939 amendment his remedy, if any, was under the Federal act. It was contended that the amendment had extended the act to include all employees of an interstate carrier under the terms of the act, so long as any part of their duties are *associated* with interstate commerce. The proposition, so stated, attempted to include the employees of interstate carriers at all times regardless of their immediate employment at the time of injury. In the light of the first employers' liability case, (*Howard* v. *Illinois Central Railroad Co.* 207 U.S. 463, 52 L. ed. 297,) we held that the attempt by Congress to extend Federal control to such a degree, under the guise of regulating interstate commerce, was not within its constitutional power. It was admitted, however, that "the provisions of the 1939 amendment which broaden the application of the act to include those employees whose employment 'in any way directly or closely and substantially' affects interstate commerce, are within the powers of Congress and constitute a valid enactment." Under the amendment, we concluded that the test for the applicability of the act must be whether the activitiy in which the employee is engaged at the time of the accident, directly or closely and substantially affects interstate commerce. Applying the test in the *Thomson case,* and strictly construing the facts, we concluded that the activity of a patrolman, in ejecting trespassers, was strictly local in character and in no way

affected interstate commerce. It was held that the Federal act did not apply and that Stoll was entitled to workmen's compensation. We note that the result was reached largely because we had, unlike other States, consistently held in previous decisions that watchmen protecting property and policing interstate tracks were not engaged in interstate commerce. *Chicago and Alton Railroad Co.* v. *Industrial Com.* 290 Ill. 599; *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board,* 273 Ill. 528.

Plaintiff contends, and the Appellate Court in effect held, that the *Thomson case* is contrary to the interpretation of the amendment which has been adopted by lower Federal courts and the courts of last resort in ten other States. It is urged that the Federal act now applies regardless of the nature of the employment at the time of the injury, so long as any part of the employee's duties are in interstate commerce. As the Appellate Court puts it, "the amendment refers to the general duties of employment, and not to the isolated work, at the time of injury." We have carefully examined the Federal cases cited, which we concede are controlling in the interpretation of a Federal act, but find none that have indulged in the liberal interpretation urged by plaintiff. The first of such cases is *Ermin* v. *Pennsylvania Railroad Co.* 36 F. Supp. 936, where the employee was injured while moving an engine between two points within a State, which movement was part of an overall plan for the withdrawal and overhaul of interstate engines. Construing the amendment liberally, and after conceding that Congress had the power to include within the act intrastate employment which affects interstate commerce, the court held that the work engaged in at the time of the injury was in furtherance of interstate commerce. This case goes no farther than the *Thomson case. Agostino* v. *Pennsylvania Railroad Co.* 50 F. Supp. 726, holds that an employee, who was injured while working on the revision of interstate tracks, was working in

furtherance of interstate commerce at the time of the accident. The employee, in *Zimmerman* v. *Scandrett*, 57 F. Supp. 799, was electrocuted while repairing the door of a roundhouse which housed interstate engines for shelter and repair. The court pointed out that, even under the amendment, death or injury while engaged in interstate commerce was prerequisite to recovery. By a liberal interpretation of the facts, it was concluded that the employment at the time of death was in furtherance of, and directly or closely and substantially related to, interstate commerce. The court avoided the contention here urged by the plaintiff by saying: "The identification with and relationship of the deceased's work to interstate commerce was so full and complete that it becomes unnecessary to consider the question of degree under the statutory phrase 'any part of whose duties'."

*Shelton* v. *Thomson,* 148 Fed. 2d 1, is also cited. There, an employee who suffered monoxide poisoning while operating a crane used to hoist wheels for interstate railroad cars, was held injured while doing work which was a furtherance of interstate commerce. In *Edwards* v. *Baltimore and Ohio Railroad Co.* 131 Fed. 2d 366, the court held that inasmuch as the locomotive on which the plaintiff was making repairs at the time of his injury "was used in interstate commerce and was destined to resume such service as soon as repaired, plaintiff, engaged in repairing it and fitting it for further commerce, thereby furthered and substantially affected interstate commerce within the meaning of the law." *Patsaw* v. *Kansas City Southern Railway Co.* 56 F. Supp. 897, presented a situation where a member of a section crew, which was engaged in repairing interstate tracks, was injured on a highway while driving for tools. The Federal act was again declared applicable because the employee's work at the time of the injury was in furtherance of interstate commerce. Plaintiff places great reliance on *Kach* v. *Monessen Southwestern Railway Co.* 151 F. 2d

400, where the court said: "In the light of this amendment it was not necessary for the plaintiff to show that either he or the defendant was engaged in the movement of an interstate shipment of freight at the very moment of the injury." An examination of the opinion discloses the statement to be purely obiter, for the issue in that case was whether the *carrier* was engaged in interstate commerce so as to be subject to the Federal Employers' Liability Act.

In the two remaining Federal cases cited, *Holl* v. *Southern Pacific Railway Co.* 71 F. Supp. 21, and *Shoenfelt* v. *Pennsylvania Railroad Co.* 69 F. Supp. 728, the courts declined to hold the act applicable. In the *Holl case* the plaintiff was a clerk in the railroad's freight claim office, which was held not to be employment in interstate commerce or employment which substantially affected it. In the *Shoenfelt case* the court held there was nothing in the record to show how the activity of emptying ashes from a boiler in a powerhouse bore on interstate commerce.

Thus, we conclude that in all the cases noted above, the test of the applicability of the Federal statute has been whether the activity in which the employee is engaged at the time of the accident is in furtherance of interstate commerce, or directly or closely and substantially affects such commerce. None of the cases have turned on the broad interpretation that an employee, whose activities and duties at the time of injury do not further or affect interstate commerce, comes within the amended act merely because in some other activity, at some other time or place, his other duties may be in, or affect, interstate transportation. We are constrained to believe that the criterion for the applicability of the act is still the work at which the employee is engaged at the time of his injury. While it need no longer be shown that the employee was actually engaged in interstate commerce at the precise moment of his injury, it must be shown that his employment at the time was in furtherance of interstate commerce, or that it directly or

closely and substantially affected such commerce. The Federal cases cited differ from the *Thomson case* only in the respect that they indulge in a very liberal interpretation of what employment is in furtherance of, and directly or closely and substantially affects, interstate commerce.

Many State decisions on the question have been cited by counsel for our assistance. Noteworthy among them is *Albright* v. *Pennsylvania Railroad Co.* 183 Md. 421, 37 Atl. 2d 870, wherein the court, after considering the amendment and existing decisions relating to it, particularly the *Ermin case,* concluded: "1. That the present test as to whether one is engaged in interstate commerce is: Were his duties, or any part thereof, at the time of injury, in furtherance of interstate commerce; or did his duties affect in any way directly or closely and substantially such commerce? If so, then the employment is in interstate commerce. 2. That the Amendment of 1939 of the Federal Act should be liberally construed to effectuate the intention of Congress."

It is interesting to note that the test arrived at is substantially the same as set forth by the *Thomson case,* however, the Maryland court, by a liberal interpretation of the facts, held that the duties of a watchman who was guarding interstate shipments was a "furtherance" of such commerce. The decisions contained in *Southern Pacific Railroad Co.* v. *Industrial Accident Com.* 19 Cal. 8d 271, 120 Pac. 2d. 880, and *Great Northern Railway Co.* v. *Industrial Com.* 245 Wis. 375, 14 N.W. 2d 152, also hold the Federal act applicable because the employment at the time of injury was construed to be a furtherance of interstate transportation. In *Louisville and Nashville Railroad Co.* v. *Potts,* 178 Tenn. 425, 158 S.W. 2d 729, *Ford* v. *Louisville and Nashville Railroad Co.* 355 Mo. 362, 196 S.W. 2d 163, and *Taylor* v. *Lumaghi Coal Co.* 352 Mo. 1212, 181 S.W. 2d 536, although the trains there involved operated only between points within a single State, they carried interstate

cars. Thus, necessarily, at all times during the tour of duty, the duties of the crew were concerned with these interstate shipments, and the question of interstate commerce was one for the jury under proper instructions by the court.

The cases which seem to support the assertion that employment at the time of injury need not enter into the test for applying the Federal act, so long as any part of the employee's duties are in interstate commerce, are *Scarborough* v. *Pennsylvania Railroad Co.* 154 Pa. Super. 129, 35 Atl. 2d. 603, *Missouri Pacific Railroad Co.* v. *Fisher,* 206 Ark. 705, 177 S.W. 2d 725, *St. Louis and Sante Fe Railway Co.* v. *Wacaster,* 210 Ark. 1080, 199 S.W. 2d. 948, *Prader* v. *Pennsylvania Railroad Co.* 113 Ind. App. 518, 30 N.E. 2d 398, and *Wright* v. *New York Central Railroad Co.* 33 N.Y.S. 2d 531, affirmed, 289 N.Y. 719, 43 N.E. 2d 97. In the *Scarborough case* the employee was normally a signal maintenance man, but at the time of injury was replacing light bulbs in a railroad station. The court, after finding that his general duties were in interstate commerce, stated that the 1939 amendment, when it stated "any part of whose duties * * * shall be the furtherance of interstate * * * commerce," intended to cover such a situation. The court did not apply the act for this reason alone, however, for it went on to say: "Furthermore, we are of the opinion that the work claimant was doing *at the moment of his injury,* [italics ours] 'directly or closely and substantially' affected the movement of interstate traffic. It is not necessary under the 1939 amendment that an employee to receive the benefits of the Federal Act be engaged at the time of his injury 'in * * * transportation * * * so closely related to it as to be practically a part of it' as stated in *Shanks* v. *D., L. & W. R. Co.*" etc. The *Fisher case* holds that the amendment broadened the scope of the act to make it applicable to employees who, though ordinarily engaged in interstate commerce,

were injured while temporarily engaged in intrastate commerce. The court recognized that such interpretation might offend against the reasons which led the United States Supreme Court to declare the first, or 1906, Employers' Liability Act unconstitutional, but, unlike this court in the *Thomson case,* held that it was a question for the Supreme bench to decide. Despite the language of the Arkansas court, it seems apparent, both from the facts and from its action of citing our decision in the *Thomson case* with approval, that the ultimate finding that the Federal Act was applicable was reached because the work at which the employee was engaged at the time of his injury, directly or closely and substantially affected interstate commerce. The *Wacaster case,* also decided in Arkansas, adds nothing new but contents itself with adopting the reasoning of the *Fisher case.* In the *Prader case,* the employee, a member of a section crew working on interstate tracks, was injured on a highway while going for a rule book which was to be used in connection with the work. The court held that although the activity of going for the book was purely local, the Federal act applied because a part of the employee's duties, *i.e.,* working on the tracks, was in interstate commerce. The *Wright case* bluntly construes the amendment to reach the same result.

It should be observed that many of the cases heretofore considered, both State and Federal, have looked to the statement of intention of the lawmakers who passed the 1939 amendment, the most notable of which is the report of the Senate Judiciary Committee. (Senate Bill 1708, Report 661.) That such reports may be used in construing a statute whose meaning is in doubt, was established in *Duplex Printing Press Co.* v. *Deering,* 254 U.S. 443, 65 L. ed. 349. One paragraph of the report states: "This amendment is intended to broaden the scope of the Employers' Liability Act so as to include within its provisions employees of common carriers who, while ordinarily engaged

in the transportation of interstate commerce, may be, at the time of injury, temporarily divorced therefrom and engaged in intrastate operations." The *Fisher, Wacaster, Prader* and *Wright cases* have held that the amendment accomplishes this result. In so doing, no analysis of the words used in the amendment, or of the section being amended, has been considered. We refrain from any detailed discussion of statutory construction, but are of the opinion that the words used in the amendment do not accomplish this avowed intent of Congress. In elaborating on the goal of the amendment the committee further reported: "The adoption of the proposed amendment will, to a very large extent, eliminate the necessity of determining whether an employee, at the very instant of his injury or death, was actually engaged in the movement of interstate traffic. If any part of the employee's duties (at the time of his injury or death) directly, closely, or substantially affected interstate or foreign commerce, the claimant would be considered entitled to the benefits of the act." This is the result which was reached in the *Thomson case,* in the Federal cases which have been called to our attention, and in the majority of the State decisions reported. In our opinion it is the only result attainable that is compatible with the words used in the amendment, when considered with the words of the statute being amended. The contrary result appears to have been reached only by isolating the words of the amendment from the statute it amends, and from accepting the aims of Congress as what was actually accomplished.

A consideration of all the cases serves greatly to emphasize that no standard interpretation has been reached. Whether employment at the time of injury is to be the criterion for the applicability of the act, or whether the general employment, regardless of the activity at the time of injury, is to be the yardstick, still awaits a final determination. We agree with the court in *Southern Pacific Railroad Co.* v. *Industrial Accident Com.* 19 Cal. 2d 271,

120 Pac. 2d. 880, that the meaning of the 1939 amendment is certainly not free from doubt. As we see it, the only common result of the decisions thus far, with the possible exception of the *Thomson case,* has been a liberal attitude in construing the employment engaged in at the time of injury as being a furtherance of interstate commerce, or as directly or closely and substantially affecting such commerce.

In the instant case, it is admitted that the plaintiff was not actually engaged in interstate commerce at the time of his injury. There remains for consideration the question of whether his activity at such time was in furtherance of interstate commerce, or whether it directly or closely and substantially affected such commerce. In other words, can the intrastate functions of an interstate switching crew, be said to further or affect interstate commerce? We have found but one case in which the facts bear a reasonable similarity. In *Lewis* v. *Industrial Accident Com.* 19 Cal. 2d 284, 120 Pac. 2d 886, the injured employee was likewise a member of a switching crew which operated interchangeably in intrastate and interstate commerce, as the employment required. On the date of his injury, the crew did not move any interstate cars until after the accident had occurred. After considering the 1939 amendment of the Federal Employers' Liability Act, the California court concluded that the employee's duty as a member of an interstate switching crew affected interstate commerce "directly, or closely and substantially, even though at the moment of injury he was not engaged in the movement of interstate traffic." We are impelled to believe that the same conclusion must be reached in the instant case. The very nature of plaintiff's duties, wherein intrastate and interstate cars were switched interchangeably and indiscriminately, as the occasion arose, using the same tracks and switching equipment, causes the movement of each type of transportation to bear a substantial relation to the other.

The flow of interstate commerce could not proceed until the interstate cars were moved. Clearing the rails for interstate commerce, in our estimation, has just as substantial an effect on such commerce as repairing rails, which the defendant admits is a furtherance of commerce under the majority view. The committee report, heretofore referred to, recognized that the greatest hardship under the Federal act prior to amendment, was suffered by switchmen whose duties were interwoven between the two types of commerce. Since we are of the opinion that the interweaving of duties in this instance also creates a reciprocal and substantial effect between the interstate and intrastate activities, the intention of Congress to aid switchmen may validly be given effect. The validity of the amendment to this extent was recognized in the *Thomson case* and has indirectly been approved by the Supreme Court of the United States by an oft-repeated assertion that: "If and when interstate business is clearly a part of the subject to be legislated on, the fact that intrastate commerce may be interwoven therewith does not prevent the Congress from exercising its powers." (*Baltimore and Ohio Railroad Co.* v. *Interstate Commerce Com.* 221 U.S. 612, 55 L. ed. 878; *T. & P. Ry Co.* v. *Rigsby*, 241 U.S. 33, 60 L. ed. 874; *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* 301 U.S. 1, 81 L. ed. 893.) We conclude that the work at which the plaintiff was engaged at the time of his injury closely and substantially affected interstate commerce, thus bringing him within the Federal Act as amended and entitling him to its benefits.

Further errors assigned by defendant allege that the trial court committed prejudicial error in ruling on medical evidence, in instructing the jury and in giving the special interrogatories, and, lastly, in permitting remarks by plaintiff's counsel which appealed to the passion and prejudice of the jury. To elaborate on these points, which are fully discussed in the Appellate Court's opinion, (337 Ill. App.

56, 84 N.E. 2d 868,) would serve no beneficial purpose. Our consideration of them leads us to agree with the Appellate Court that, under the circumstances, no prejudicial error was committed.

For the reasons previously stated, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*