STEVE MONTEFELICE, Plaintiff-Appellee, *v.* TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Appellant.

Fifth District    No. 80-510

Opinion filed September 30, 1981.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard M. Roessler and William P. Gavin, of counsel), for appellant.

Jon G. Carlson, of Granite City (William J. Harte, of counsel), for appellee.

Mr. JUSTICE WELCH delivered the opinion of the court:

Steve Montefelice is employed as a switchman by the Terminal Railroad Association of St. Louis. In the evening of January 5, 1978, he was riding on the caboose of a train in General Motors' Pickerel Railroad Yard in St. Louis. He saw another train, unguarded by a switchman, heading toward the caboose from an adjoining track. Montefelice leapt from the caboose to avoid the imminent collision, but as he jumped to safety he struck a railroad car on another line, injuring his back.

Suit was brought in the Circuit Court of Madison County against Terminal under the Federal Employers' Liability Act (FELA) (45 U.S.C. par. 51 *et seq.* (1976)). Following the presentation of the plaintiff's evidence, Terminal admitted its negligence and the plaintiff's lack of contributory negligence. The jury assessed Montefelice's damages at $200,000 and judgment was entered on that verdict. In this appeal, Terminal claims that it was denied a fair trial because (1) the plaintiff was allowed to introduce evidence that he had been threatened with discharge for bringing this action, and (2) it was improperly restricted in cross-examining a medical witness for the plaintiff.

The propriety of evidence concerning wrongful discharge in FELA actions has been discussed in several cases from other jurisdictions. In *Beanland v. Chicago, Rock Island & Pacific R.R. Co.* (8th Cir. 1973), 480 F.2d 109, the plaintiff was injured as he jumped from a train. A collision followed, in which a brakeman on his train was killed. The plaintiff was discharged, and he sued his employer in Federal court. His complaint stated three causes of action; the first was brought under FELA to recover for injuries caused by the negligence of his employer, and the last two were breach of contract and conspiracy counts, respectively, in which the plaintiff sought recovery for wrongful discharge. The FELA count was severed from the others and tried separately. During the course of that trial, plaintiff's counsel asked several medical witnesses hypothetical questions which referred to the death of the brakeman and to the plaintiff's discharge. The purpose of these questions was to assess the effect of these incidents on the plaintiff's mental condition.

On appeal, the defendant challenged the trial court's decision to permit the use of these questions. In considering the discharge portion of the questions, the circuit court noted that "[d]amages resulting from *intentional* acts, such as the discharge, have no place in a personal injury FELA action which deals exclusively with *negligence*." (480 F.2d 109, 113.) It was concluded that evidence of the discharge was prejudicial error.

Montefelice argues that *Beanland* is distinguishable from this case. He states that, whereas Beanland did not relate the intentional act of discharge to his injuries from the collision, he contends that he suffered

psychological damage because of the collision and that the later threats made by defendant's employees only aggravated his condition. Whether or not this distinction would be significant enough to disregard *Beanland*, the fact remains that Beanland did argue, as does Montefelice, that "since the testimony of the medical witnesses related the mental injury and worry to the physical trauma, damages for such mental anguish were proper herein." (480 F.2d 109, 112.) *Beanland* thus cannot be distinguished for the reasons given by the plaintiff.

■■ ■ The *Beanland* decision is in accord with other cases which have found the introduction of evidence or argument concerning a plaintiff's discharge to be prejudicial in a FELA action. (*Kelly v. New York, New Haven & Hartford R.R Co.* (D. Mass. 1956), 138 F. Supp. 82; *Loftin v. Howard* (Fla. 1955), 82 So. 2d 125.) To prohibit this evidence is at least as warranted when, as here, the plaintiff has not been discharged, but has only been threatened in that regard. Because the decisions of the Federal courts in interpreting a Federal statute such as the FELA are to be considered as controlling (*Elgin, Joliet & Eastern Ry. Co. v. Industrial Com.* (1956), 9 Ill. 2d 505, 138 N.E.2d 553), we must apply the rule of *Beanland* to this case and conclude that the evidence of discharge threats made to the plaintiff should not have been introduced. The defendant is therefore entitled to a new trial, although, as has been mentioned above, the only contested issues remaining pertain to plaintiff's damages.

As a new trial must be held because of the evidence of discharge threats, it is not strictly necessary to examine the second assignment of error. However, to ensure a fair trial on remand, we will consider this argument nonetheless. Essentially, the defendant complains of its inability to cross-examine one of plaintiff's medical witnesses about his surgical experience.

The witness in question, Dr. Deitchman, a psychiatrist, began to treat Montefelice after the January 1978 accident, and after a facet rhizotomy had been performed on him by a Dr. Schaerer, who did not testify at trial. As explained by plaintiff's witness Dr. Goldenberg, certain back pain may be alleviated by destroying the nerve to one or more facet joints which lie between the vertebrae. Montefelice underwent this procedure, known as a facet rhizotomy, to reduce a burning sensation in his lower back and buttocks. After the operation, he still felt this pain, and he went to Dr. Deitchman to receive treatment for the psychological aspects of his injury. Deitchman did not ask Dr. Schaerer about the procedure used on Montefelice's back, nor did he ever consult with Dr. Goldenberg, who was generally responsible for treating Montefelice. Dr. Deitchman did tell Montefelice "that his complaints had a connection with the trauma [the accident] and that whatever procedures [were] followed may not have given him complete relief."

Before Deitchman took the stand, plaintiff's counsel made a motion *in limine* to prevent defense counsel from cross-examining Deitchman about his understanding of facet rhizotomy procedures. The court, reasoning that the rhizotomy was a specialized operation far outside Deitchman's normal practice, allowed the motion. Terminal assigns this as error.

■■ As a general proposition, the scope of cross-examination of witnesses is entrusted to the discretion of the trial court. But, a wide latitude should be granted to attorneys in their cross-examination of expert witnesses, in order to test their opinions, which are usually on subjects which are not of common knowledge. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *City of Chicago v. Avenue State Bank* (1972), 4 Ill. App. 3d 235, 281 N.E.2d 66.

The plaintiff does not disagree with these principles, but states that the court's order should be upheld under the authority of *Lilegdon v. Hanuska* (1967), 85 Ill. App. 2d 262, 229 N.E.2d 314. The plaintiff, Mrs. Lilegdon, was injured in a collision with defendant's automobile. Some time after the collision, a hysterectomy was performed on her. Defendant introduced a witness, Dr. Petty, who testified that Mrs. Lilegdon had made a complete recovery before the hysterectomy was performed, and therefore there was no relation between the collision and the hysterectomy.

Plaintiff's counsel cross-examined Dr. Petty to show his lack of experience with this type of surgery. Dr. Petty replied that he had performed a hysterectomy at Augustana Lutheran Hospital some time during the past six months. As rebuttal evidence, plaintiff endeavored to call as a witness the record librarian of that hospital to testify that Dr. Petty had not performed such an operation there. The trial court did not allow the use of this witness, stating that this testimony was not solely related to Dr. Petty's qualifications and that the offered impeachment did not pertain to the ultimate issues and facts in the case. This ruling was upheld on appeal.

From *Lilegdon*, Montefelice urges us to affirm the trial court's restriction of Terminal's cross-examination of Dr. Deitchman. He claims that Deitchman's knowledge of facet rhizotomy procedures is not material to the issues and ultimate facts in this case. However, it is a mistake to apply the language of *Lilegdon* directly to this case. This is because the plaintiff in *Lilegdon* offered to impeach Dr. Petty with extrinsic evidence, which may not be done on a collateral matter (*Sullivan v. Fawver* (1965), 58 Ill. App. 2d 37, 206 N.E.2d 492), while in this case, the defendant desired to cross-examine Dr. Deitchman about his surgical knowledge and experience. In *Lilegdon*, the court permitted the plaintiff to test Dr. Petty's knowledge by cross-examining him on his familiarity with hyster-

ectomy operations. To us, this portion of *Lilegdon* is entirely in agreement with the policy behind cross-examination of expert witnesses, and is a closer analogy to the cross-examination requested by Terminal than is the offered rebuttal evidence refused by the *Lilegdon* trial court.

■■ ■ Unlike the trial judge in this case, we do not believe that Dr. Deitchman's occupation as a psychiatrist immunizes him from cross-examination on surgical procedures. Where a medical witness makes a diagnosis based entirely or in part on the success or failure of a surgical procedure, that witness' knowledge or experience concerning that procedure is a proper subject for cross-examination, even if that procedure is not within the witness' normal area of practice. For this reason, the trial court improperly restricted Terminal's cross-examination of Dr. Deitchman.

In conclusion, this cause is remanded to the Circuit Court of Madison County for a new trial on the issue of plaintiff's damages. The plaintiff may not refer to threats of discharge made to him by defendant's employees, and the defendant is not to be prevented from cross-examining Dr. Deitchman concerning his experience with facet rhizotomy operations.

Affirmed in part, reversed in part, and remanded.

KASSERMAN, P. J., and JONES, J., concur.