MARY N. BYRD, Plaintiff-Appellant, v. THE AETNA CASUALTY & SURETY COMPANY *et al.*, Defendants-Appellees.

Second District   No. 2—85—0837

Opinion filed February 5, 1987.

Richard J. Smith, of Sullivan, Smith, Hauser & Noonan, of Waukegan, for appellant.

Louis W. Brydges, Jr., of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Mary N. Byrd, appeals from the trial court dismissal of count III of her complaint against defendant Anchor Glass Container Corporation (Anchor). The trial court dismissed count III on grounds that the claim asserted there was preempted by Federal law.

Count III of the complaint sets forth the following allegations. Byrd was an employee of defendant Anchor. On June 27, 1984, she was terminated by Anchor because she had received temporary total disability benefits under section 8(b) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(b)). The complaint then cites section 4(h) of the Act which makes it unlawful for an employer to discharge an employee for exercising rights or remedies granted to

him by the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(h)). According to plaintiff's allegations, section 4(h), as well as the public policy of the State of Illinois, prohibit employers from discharging an employee for exercising his or her rights under the Act and make an offending employer liable for actual and punitive civil damages.

Anchor's motion to dismiss alleges that at the time she was discharged, Byrd was a member of the Glass, Pottery, Plastics and Allied Workers International Union. The union and Anchor were parties to a collective-bargaining agreement which provided that a unionized employee could only be discharged for "just cause" and that disputes regarding discharge had to be resolved according to the grievance procedure established by the agreement. According to Anchor's allegations, Byrd had exhausted her remedies under the grievance and arbitration provisions of the labor contract and was precluded from relitigating the issue of whether she was wrongfully discharged.

On July 18, 1985, pursuant to Anchor's motion for reconsideration, the trial court reversed an earlier ruling and dismissed count III for lack of subject matter jurisdiction. The court had concluded that the claim set forth in count III was preempted by Federal law.

On appeal, Byrd asserts that the trial court erroneously dismissed the retaliatory-discharge count of her complaint on grounds of preemption. She contends that her cause of action arises under State law because the Illinois Supreme Court created a retaliatory-discharge tort in furtherance of the workers' compensation policy of the State, independent of a union employee's rights under a collective-bargaining agreement. Anchor responds that the Illinois law is irrelevant pursuant to a subsequently decided United States Supreme Court case which indicates that Byrd's action is preempted by Federal labor law. In our opinion, plaintiff's position is the correct one.

Through the Workers' Compensation Act, the legislature gave expression to a public policy of providing employees with an effective and fair way to seek compensation for injuries sustained in the course of their employment without fear or risk of losing their jobs. (Ill. Rev. Stat. 1983, ch. 48, par. 138.2; *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 148, 473 N.E.2d 1280.) This public policy was implemented in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, which held there was a tort remedy for at-will employees who were discharged in retaliation for filing claims under the Act. The *Kelsay* court was convinced that a cause of action for retaliatory discharge was needed in order to discourage employers from threatening termination, or actually terminating, employees who claimed compensation. Without such a remedy, according to the court, employees could

be intimidated into relinquishing their rights under the Act.

In *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280, our supreme court extended the cause of action established in *Kelsay* to employees who were union members protected by collective-bargaining agreements. Those agreements provided specific grievance procedures to guarantee that an employee was discharged only for "just cause." Sackett, the defendant in *Midgett*, argued that while *Kelsay* provided a remedy for employees otherwise without a remedy, the plaintiffs in *Midgett* had a remedy through the grievance procedure. Therefore, the *Kelsay* rationale was not applicable to the union employees. The court concluded, however, that "in order to provide a complete remedy it is necessary that the victim of a retaliatory discharge be given an action in tort, independent of any contract remedy the employee may have based on the collective-bargaining agreement." 105 Ill. 2d 143, 149, 473 N.E.2d 1280.

The *Midgett* court focused on the availability of punitive damages in tort as opposed to job reinstatement and full back pay under the usual union contract and noted that without punitive damages "there is no available sanction against a violator of an important public policy of this State." (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 150, 473 N.E.2d 1280.) According to the court, it would be unreasonable to immunize from punitive damages employers who unjustly discharged union employees and, at the same time, penalize employers who unfairly terminated a nonunion employee. The *Midgett* court concluded that "[t]he public policy against retaliatory discharges applies with equal force in both situations." (105 Ill. 2d 143, 150, 473 N.E.2d 1280.) The viability of the tort created in *Midgett* was reaffirmed in *Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545, 499 N.E.2d 435.

Although Anchor does not dispute the holding of *Midgett*, it does assert that the *Midgett* court expressly did not consider the preemption issue. Anchor further argues that even if preemption was examined, *Midgett* is irrelevant because *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, a case decided after *Midgett*, indicates that Byrd's State action is preempted under section 301 of the Federal Labor Management Relations Act (LMRA) (29 U.S.C.A. sec. 185(a) (West 1978)). While we acknowledge that *Midgett* did not analyze the question of preemption, we cannot agree that *Allis-Chalmers* requires preemption of the cause now before us.

Section 301 of the LMRA provides in pertinent part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce *** may be

brought in any district court of the United States having jurisdiction of the parties ***." (29 U.S.C.A. sec. 185(a) (West 1978).) Byrd does not contest that section 301 has preemptive effect in appropriate cases. She maintains, however, that this is not such a case. Our review of the law persuades us that plaintiff is correct.

*Local 174, Teamsters v. Lucas Flour Co.* (1962), 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571, held that State suits alleging a breach of a labor contract must be brought under section 301 and be resolved by reference to Federal labor law. The reasons given for its holding by the *Lucas Flour* court involved the need for uniformity and predictability in giving meaning to the contract terms. According to the court, without that certainty, parties could never be sure of what they were bargaining for, and the negotiation process would be impeded. Also, parties might get into endless disputes over interpretation of contract terms and be unwilling to agree on terms providing for final resolution of disputes. 369 U.S. 95, 103-04, 7 L. Ed. 2d 593, 599, 82 S. Ct. 571, 576-77.

In *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, the Supreme Court extended the principles set forth in *Lucas Flour* from breach of labor contract actions to State tort actions whose resolution requires interpretation of a labor contract. In *Allis-Chalmers* Lueck was a unionized employee of the petitioner corporation. The collective-bargaining agreement between the union and Allis-Chalmers provided group health and disability benefits for nonoccupational illness and injury to employees represented by the union. The agreement also established a grievance procedure which included binding arbitration. Lueck filed a claim for, and received, nonoccupational disability benefits. However, a dispute arose over the timeliness with which the disability payments were made. Instead of grieving the dispute, Lueck filed suit in Wisconsin State court against Allis-Chalmers and its insurer, claiming that they breached their duty to act in good faith, a tort recognized in Wisconsin. The Wisconsin Supreme Court found that the tort claim was independent of any contract claim and thus was not preempted. The United States Supreme Court disagreed.

After citing the principles enunciated in *Lucas Flour*, the *Allis-Chalmers* court pointed out that not all labor disputes are preempted by section 301 and that Congress did not intend to prevent all inconsistent State regulation of substantive contract provisions. "Such a rule," according to the court, "would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored." (*Allis-Chalmers Corp. v. Lueck* (1985), 471

U.S. 202, 212, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1911-12.) Accordingly, the court said, State rules prohibiting conduct or establishing rights and duties independent of a labor contract were not meant to be preempted. On the other hand, State-law rights and duties which did not exist independently of a private contract, and which thus could be waived or altered by agreement of the parties, were preempted by such agreements. The court stated it would focus on whether the Wisconsin tort action conferred "nonnegotiable state-law rights on employers or employees independent of any right established by contract," or whether evaluation of the tort claim was "inextricably intertwined" with consideration of the contract terms. 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.

In analyzing the relationship between the contract and the State tort, the *Allis-Chalmers* court found that even under Wisconsin law the tort was intrinsically related to the nature and existence of the contract. Wisconsin courts had recognized that the tort existed for breach of a duty which was inherent in all contracts and that the scope of the duty in a given case could be determined only by considering the particular contract itself. As stated by the *Allis-Chalmers* court: "The duties imposed and rights established through the state tort thus derive from the rights and obligations established by the contract." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 217, 85 L. Ed. 2d 206, 219, 105 S. Ct. 1904, 1914.

The court recognized that the parties to a contract like the one between Allis-Chalmers and Lueck's union were free to bargain about performance of their contract duties. Specifically, Allis-Chalmers and the union could agree that the kind of performance tendered by Allis-Chalmers and its insurer, even though untimely, would be sufficient to fulfill the requirements of the contract. Thus, resolution of the tort claim required interpretation of the contract to determine whether it imposed an obligation to provide payments in a timely manner, and if so, whether that duty had been breached. Section 301 required that such interpretation, and the corresponding evaluation of the tort action, be conducted pursuant to Federal labor contract law.

Although the *Allis-Chalmers* court found Lueck's State action to be unconditionally preempted by section 301, the court also seemed concerned about the possible overly broad application of its decision. It went to considerable effort to precisely pinpoint and limit its holding: "It is perhaps worth emphasizing the narrow focus of the conclusion we reach today. We pass no judgment on whether this suit also would have been pre-empted by other federal laws governing employment or benefit plans. Nor do we hold that every state-law suit asserting a

right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by section 301. \*\*\*. We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a section 301 claim, [citation], or dismissed as pre-empted by federal labor-contract law." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.) Also, in a footnote discussing its understanding that determination of good-faith performance in the case before it was related to application of contract terms, the court added: "We pass no judgment on whether an independent, nonnegotiable, state-imposed duty which does not create similar problems of contract interpretation would be pre-empted under similar circumstances." (471 U.S. 202, 217 n.11, 85 L. Ed. 2d 206, 219 n.11, 105 S. Ct. 1904, 1914 n.11.) We are of the opinion that the matter now before us involves a nonnegotiable, State-imposed duty and is not preempted under section 301.

Unlike the employee in *Allis-Chalmers*, who had a right to the disability benefits he sought *only* under the collective-bargaining contract, plaintiff here has a right to workers' compensation benefits pursuant to a State statute, completely separate and apart from the union contract. Nevertheless, Anchor argues that the agreement here provides a procedure to contest alleged violations of the prohibition on wrongful discharge and concludes that "[t]he rights established by the tort are thus intertwined with rights established by the collective bargaining agreement" and that the tort "purports to define rights and duties also defined in the collective bargaining agreement." Plaintiffs' statements assume that the parties may bargain regarding rights and duties whose genesis is found in the Workers' Compensation Act.

The crux of *Allis-Chalmers* was that the parties there could bargain regarding nonoccupational disability benefits. Since they could bargain over that item, the court was called upon to consider the results of that bargaining when evaluating plaintiffs' tort claim. The expectations of the parties had to be examined in order to determine if they had actually been violated, as alleged by plaintiff in the tort action. That is not the situation in the case now before us. Determination of a violation of the Act is in no way dependent upon interpretation of any term of the contract because the rights and duties created by the Act were not the subject of any bargaining between the parties. The contract did not embody the expectations of the parties regarding workers' compensation. Those expectations arose exclusively from the

statute.

Moreover, the parties could not have bargained regarding workers' compensation even if they had wanted to do so. As indicated above, the *Allis-Chalmers* court noted that Congress did not intend section 301 to preempt all inconsistent State regulation since such a rule would allow the parties to collective bargaining to evade those State labor standards they found distasteful. The court illustrated its conclusion by stating: "Clearly, section 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 212, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) In the case at bar, the Act makes it unlawful for an employer to discharge an employee because of his or her exercise of rights granted by the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.4(h)). Section 26 makes violations of the Act a petty offense. (Ill. Rev. Stat. 1983, ch. 48, par. 138.26.) Thus, the parties could not have bargained to waive the prohibition on Anchor's use of retaliatory discharge. Nor could they have bargained to alter Byrd's rights under the Act.

Anchor and the union did not bargain relative to statutory workers' compensation, and no provisions pertinent to such compensation became part of the contract. Therefore, the tort does not "purport to define rights and duties also defined in the collective bargaining agreement," as claimed by Anchor. Resolution of plaintiffs' tort claim for retaliatory discharge does not require interpretation of what the parties understood to be the meaning of "just cause," as that term is used in the contract. On the contrary, the tort protects "nonnegotiable state-law rights *** independent of any right established by contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) The mere possibility that arbitration of a contract dispute could also conceivably determine that a retaliatory discharge, such as the one alleged by plaintiff, constitutes discharge for other than just cause, does not make the instant tort claim derivative of a breach-of-contract claim. The independence of plaintiffs' tort claim protects it from preemption under section 301.

Our supreme court recently reached the same conclusion we have reached here. In *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, the court considered the question of whether, in light of *Allis-Chalmers*, the independent State tort action recognized in *Midgett* was preempted under section 301 of the LMRA. After analyzing *Allis-Chalmers*, the court held that, under the principles announced there, the workers' compensation retaliatory-discharge claims before it did not fall within the preemptive scope of section 301.

According to the *Gonzalez* court, the Wisconsin tort claim in *Allis-Chalmers* was derivative of the labor contract. Therefore, it was dependent upon interpretation of the contract for its resolution. This dependence subjected the claim to preemption. The claim in *Gonzalez* itself, on the other hand, was "firmly rooted in the clearly mandated public policy of this State, which, regardless of the existence or absence of a collective-bargaining agreement, confers upon all employees and employers certain nonnegotiable rights and imposes certain nonnegotiable duties and obligations." *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 5.

The court heavily stressed the public policy underpinnings of the State tort. It was noted that State policy favors protection of all employees, unionized or not, who exercise their rights under the workers' compensation statute. The court explained that, in furtherance of the policy, it had recognized an action in tort in order to assure that employees could exercise their workers' compensation rights without fear or risk of termination.

Defendant in *Gonzalez* argued, as does defendant in the instant case, that plaintiffs' claims were preempted because an interpretation of the "just cause" provision of the labor contract was necessary to their resolution. In response, the court noted that, in order to prevail in a retaliatory-discharge suit in Illinois, an employee need show only that he was discharged because of his activities and that the discharge is in violation of clearly mandated public policy. The court then emphatically stated that determination of whether an employee was discharged in violation of clearly mandated public policy does not turn upon whether the discharge was for "just cause" as that phrase is used in a labor contract. According to the court: "Were it otherwise, the public policy of this State would become a mere bargaining chip, capable of being waived or altered by the private parties to a collective bargain." *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 6.

The *Gonzalez* court leaves no doubt that the Illinois tort action for retaliatory discharge for exercising workers' compensation rights springs solely from clearly mandated public policy. As already noted, under *Allis-Chalmers*, such independent State tort actions may be pursued even by unionized employees covered by collective-bargaining agreements. It is only when a State tort action must be resolved by reference to, and interpretation of, a contract term that the State remedy is preempted.

We recognize that the Federal District Court for the Southern District of Illinois has reached a conclusion opposite to the one we reach

here. The facts in *Lingle v. Norge Division of Magic Chef, Inc.* (S.D. Ill. 1985), 618 F. Supp. 1448, as noted by defendant, are almost identical to the facts of the case at hand. The *Lingle* court held that the plaintiff's cause was preempted by section 301 of the LMRA and cited *Allis-Chalmers* in support. The only portion of the *Allis-Chalmers* reasoning specifically alluded to by *Lingle* was the Supreme Court's concern with effectuating a policy favoring uniform Federal interpretation of contract phrases found in collective-bargaining agreements. The relevant comments in *Allis-Chalmers*, however, were made in reference *only* to the contract-derivative tort claims which the court had already determined were preempted. At that point in *Allis-Chalmers*, the court was merely presenting a compelling reason for requiring that all *contract* matters, including tort actions based on a contract, be brought before an arbitrator prior to invoking the power of the court. Nevertheless, without further analysis of the *Allis-Chalmers* principles, the *Lingle* court found that the plaintiff's claim was inextricably intertwined with the contract clause prohibiting wrongful discharge and thus was preempted. The court also noted that while the tort allowed punitive damages, such damages were not contemplated by the parties to the labor contract.

We find the *Lingle* analysis of *Allis-Chalmers* to be incomplete and lacking in depth. Also, the court's comments regarding punitive damages point up precisely one of the dangers of casual preemption pinpointed in *Allis-Chalmers*: it allows employers and unions to evade the State regulations they find unfavorable. Decisions of the United States district courts will be given respectful consideration, but will be adopted only when persuasive in their rationale and reasoning. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1057, 452 N.E.2d 804.) We do not find *Lingle* persuasive.

Byrd cites *Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 85 L. Ed. 2d 728, 105 S. Ct. 2380, as further support for her position that her State action is not preempted. The *Metropolitan Life* court upheld a State statute which imposed minimum mental-health-care benefits on, amongst others, insurance policies purchased pursuant to collective-bargaining agreements regulated by the LMRA. The insurer argued that the statute was preempted by the LMRA because it imposed a contract term that would otherwise be a subject of collective bargaining.

We note at the outset that *Metropolitan Life* did not involve a preemption challenge under section 301 as does the case now before us. Rather, the *Metropolitan Life* court began its analysis by noting, and

briefly enunciating, two distinct LMRA preemption doctrines. The doctrine which controlled *Metropolitan Life*, and which is significant to the instant case, was set forth in *Local 20, Teamsters v. Morton* (1964), 377 U.S. 252, 12 L. Ed. 2d 280, 84 S. Ct. 1253, and *Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Com.* (1976), 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548. The *Morton/Machinists* preemption principles protect policies underlying the LMRA by preempting State law and State causes of action concerning conduct which Congress intended to be unregulated. (*Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 749-50, 85 L. Ed. 2d 728, 746-47, 105 S. Ct. 2380, 2394-95.) The court noted that neither a State nor the National Labor Relations Board, which administers the LMRA, has authority to regulate such conduct.

Although the *Metropolitan Life* court recognized that the State-mandated minimum-benefits law interfered with collective bargaining, it did not find the law to be preempted. The court carefully considered the legislative history of the LMRA and concluded that it is "concerned primarily with establishing an equitable *process* for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions." (Emphasis added.) (*Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 753, 85 L. Ed. 2d 728, 749, 105 S. Ct. 2380, 2396.) The court focused heavily on equality of bargaining power. Inequality of such power was perceived as an evil to be remedied by the LMRA. The evil, however, was not seen as the result of having employment terms set by public law rather than private agreement. Thus, as long as there was no basic conflict between the purpose of a State law and the general goals of the LMRA, there was no incompatibility between Federal rules fostering equal bargaining power and State (or Federal) legislation imposing minimal standards on negotiated contract terms. By way of analogy the court noted that it had never been successfully argued that minimal labor standards imposed by other Federal laws did not apply to unionized employers and employees. 471 U.S. 724, 755, 85 L. Ed. 2d 728, 750, 105 S. Ct. 2380, 2397.

It was stressed by the *Metropolitan Life* court that minimum State labor standards affect union and nonunion employees equally and that such standards have little effect on either the collective-bargaining process or the right of self-organization. On the contrary, such State laws are designed to promote the interests of employees individually rather than collectively. The court cited the *Allis-Chalmers* principle that to allow bargaining for employment terms that an employer can-

not impose under State law is to allow the parties to a contract to free themselves of State restrictions they do not like. According to the court: "It would turn the policy that animated the [LMRA] on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers." *Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 756, 85 L. Ed. 2d 728, 750, 105 S. Ct. 2380, 2398.

The *Metropolitan Life* court was very careful to affirm and preserve the status of State labor laws. The LMRA was perceived as providing the framework for self-organization and collective bargaining within the far broader context of preexisting State laws. In the view of the court it was not the intent of the LMRA to disturb State health and safety standards adopted pursuant to the States' broad police powers. Federal law was meant to supplant State law only when the State law frustrated the purposes of the LMRA. Since the challenged State statute was a valid exercise of the police power and did not limit the rights of self-organization and collective bargaining protected by the LMRA, it was not preempted. We find that the principles set forth in *Metropolitan Life* demand a similar result in the instant case.

First, the tort in this case is a valid exercise of the State's police power. It was adopted as a deterrent to prohibited conduct and designed to promote the health and safety of employees. Moreover, there is no conflict between the remedial purpose of the retaliatory-discharge tort and the goals of the LMRA. The tort is intended to remedy violations of an individual employee's rights; thus, union and nonunion employees are equally affected. The LMRA is designed to equalize bargaining power between employers and unions by providing for self-organization and collective bargaining. Operation of the tort remedy does not interfere with either of these purposes of the LMRA. Absent any conflict, the State cause of action is not preempted.

As support for its preemption argument, Anchor cites *Vantine v. Elkhart Brass Manufacturing Co.* (7th Cir. 1985), 762 F.2d 511, which allowed removal to Federal court of a worker's compensation retaliatory-discharge claim. The claim was initially brought as a State tort claim pursuant to the Indiana Workers' Compensation statute. Central to *Vantine*, however, was the court's analysis of whether or not the State of Indiana would recognize a cause of action in tort for the retaliatory discharge of an employee covered by a collective-bargaining agreement which provided that such a discharge was with just cause. Although the Indiana Supreme Court had already created a tort remedy for at-will employees subjected to workers' compensation retalia-

tory discharge, the *Vantine* court concluded that that tort would not be extended by the Indiana courts to employees covered by a collective-bargaining agreement. The court reasoned that under Indiana law a collective-bargaining agreement could not relieve an employer of its workers' compensation duties by allowing the employer to discharge an employee for filing a workers' compensation claim. The court reached this conclusion on the basis of a section of the State workers' compensation statute which provided that the requirements of the statute could not be set aside by any contract or agreement. Thus, according to the court, the employee's rights were adequately protected because he could bring an action for breach of the labor contract. Since the employee's rights arose under the contract, and not the workers' compensation statute, the case became a matter of Federal law and removal was proper.

*Vantine* is readily distinguishable from the instant case since, unlike the Indiana courts, the Illinois Supreme Court has created a tort remedy for the workers' compensation retaliatory discharge of employees covered by a collective-bargaining agreement. (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280.) Moreover, the conclusion of the United States Court of Appeals for the Seventh Circuit that the parties to a labor contract cannot bargain regarding statutory workers' compensation rights and duties probably rendered the *Vantine* case immune to preemption. As noted above, under *Allis-Chalmers*, nonnegotiable State rights are not subject to preemption by Federal law. In any event, the general rule is that Federal circuit court decisions are not binding on Illinois courts (*Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 139, 479 N.E.2d 988), and we decline to follow *Vantine*.

In conclusion, Byrd's cause of action is not preempted under either the breach of contract provisions found in section 301 of the LMRA or the preemption principles set forth in *Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 85 L. Ed. 2d 728, 105 S. Ct. 2380. Accordingly, the order dismissing count III of plaintiff's complaint is reversed, and the matter is remanded to the trial court of Lake County for further proceedings.

Reversed and remanded.

LINDBERG, P.J., and REINHARD, J., concur.