THOMAS NETZEL, Plaintiff-Appellant, v. UNITED PARCEL SERVICE, INC., Defendant-Appellee.

First District (3rd Division)   No. 85—1606

Opinion filed November 25, 1987.—Rehearing denied January 25, 1988.

Robert E. Lunz and Marvin A. Brustin, Ltd., both of Chicago, for appellant.

John A. McDonald and Steven H. Adelman, both of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

After trial in the circuit court of Cook County on plaintiff Thomas Netzel's complaint for retaliatory discharge against his employer,

defendant, United Parcel Service, Inc., the jury found in his favor and awarded him $200,000 in compensatory damages. Plaintiff now appeals from the trial court's grant of defendant's motion for a new trial. Plaintiff's sole contention is that the trial court abused its discretion in granting a new trial.

In view of our disposition of this appeal, we need only briefly state the underlying facts. Plaintiff, a package car driver for defendant, injured his knee while on the job on June 7, 1977. Plaintiff filed a workmen's compensation claim on July 12, 1978. Plaintiff's subsequent attempts to return to work, including one on the date of his discharge, August 7, 1979, were unsuccessful because of his injury. Defendant maintained that it discharged plaintiff for disobeying a supervisor's order to remain on his route on August 7, 1979, until the supervisor met him to assist in the completion of the route. Plaintiff maintained the supervisor gave him permission to return to the distribution center with undelivered packages on that date, as had been the case on the prior occasions when he found he could not continue his route because of his injury.

Plaintiff's employment was covered by a collective bargaining agreement between defendant and Teamster Local 705. The agreement prohibited defendant from discharging plaintiff without "just cause." The contract also included grievance arbitration procedures to resolve disputes regarding discharge for "just cause." Plaintiff did not pursue his remedies under the labor contract. Instead, he filed suit against defendant alleging he was discharged in violation of section 4(h) of the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.4(h)) for having filed a claim for compensation under the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*).

In its post-trial motion, defendant requested either a directed verdict at the close of plaintiff's case, judgment notwithstanding the verdict, a new trial, or a remittitur. The trial court denied defendant a judgment notwithstanding the verdict. It did not rule on the motion for directed verdict or remittitur. The trial court granted defendant a new trial because in its opinion: (1) there was no evidence to link plaintiff's discharge "with his having filed a Workmen's Compensation Claim more than one year prior to his discharge"; and (2) the damage award could not stand because of plaintiff's testimony that he could not perform the work required of a package car driver for defendant and because he was not "given credit for some of the benefits he received" by the jury. By this last remark, the trial court apparently referred to disability payments plaintiff received as a result of his injury after his discharge by defendant.

■■ We believe that defendant's challenge to the trial court's and this court's subject matter jurisdiction is dispositive. As such, we do not reach the merits of plaintiff's appeal. Defendant argues that the circuit court lacked jurisdiction over the subject matter because Federal law preempts plaintiff's State law claim. Plaintiff responds that defendant waived this issue because it raised it for the first time on appeal. Plaintiff notes that defendant also failed to raise the issue on a cross-appeal and claims it cannot now assert cross-errors. We disagree with plaintiff's contention. The issue of subject matter jurisdiction can be raised at any time. *Arrington v. Industrial Comm'n* (1983), 96 Ill. 2d 505, 509, 451 N.E.2d 866.

Defendant maintains that claims of retaliatory discharge which are based on the filing of workmen's compensation claims are subject to the jurisdiction of the National Labor Relations Board and, therefore, preempted by Federal law. Alternatively, defendant contends that plaintiff's claim is preempted by section 301 of the Federal Labor Management Relations Act (LMRA) (29 U.S.C. §185(a) (1976)). This section provides that suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce may be brought in any Federal district court having jurisdiction of the parties. (29 U.S.C. §185(a) (1976).) It has been construed to allow an employee to bring a breach of contract action alleging a violation of a collective bargaining agreement after the employee has attempted to exhaust any exclusive grievance and arbitration procedures provided in the agreement. (*Vaca v. Sipes* (1967), 386 U.S. 171, 184, 17 L. Ed. 2d 842, 854, 87 S. Ct. 903, 914.) Defendant argues that, even though plaintiff's claim does not appear by its language to fall within section 301, it nevertheless must be treated as such a claim and plaintiff must prove exhaustion of his contract remedies. In support of its position, defendant cites *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904.

In *Allis-Chalmers*, the issue was whether section 301 of the LMRA preempted a State tort action for bad-faith delay in disability benefit payments due under a collective bargaining agreement. The Supreme Court reasoned that, to determine whether State tort claims such as that at issue were preempted by section 301, it had to be determined whether such claims conferred nonnegotiable State law rights independent of any contract rights or whether evaluation of the tort claim was "inextricably intertwined" with consideration of the terms of the labor contract. (471 U.S. at 213, 85 L. Ed. 2d at 216, 105 S. Ct. at 1912.) The court found that the State tort claim at issue was preempted by section 301 because "[t]he duties imposed and

rights established" by it derived "from the rights and obligations established by the contract." (471 U.S. at 217, 85 L. Ed. 2d at 219, 105 S. Ct. at 1914.) The Court established a general rule applicable to such cases: "[W]hen resolution of a state-law claim is substantially dependent upon an analysis of" the terms of a collective bargaining agreement, the claim must either be treated as a section 301 claim or dismissed as preempted by Federal law. As such, the court concluded, the plaintiff's complaint should have been dismissed by the State court because he failed to avail himself of the grievance procedure established in the collective bargaining agreement. 471 U.S. at 220-21, 85 L. Ed. 2d at 221, 105 S. Ct. at 1916.

Defendant additionally cites several lower court cases decided since *Allis-Chalmers* which hold that an employee covered by a collective bargaining agreement prohibiting discharge without "just cause" cannot bring an action for retaliatory discharge in violation of State workers' compensation statutes. See, *e.g.*, *Lingle v. Norge Division of Magic Chef, Inc.* (S.D. Ill. 1985), 618 F. Supp. 1448, *aff'd* (7th Cir. 1987), 823 F.2d 1031, *cert. granted* (1987), ___ U.S. ___, 98 L. Ed. 2d 185, 108 S. Ct. 226; *Johnson v. Hussman Corp.* (E.D. Mo. 1985), 610 F. Supp. 757, *aff'd* (8th Cir. 1986), 805 F.2d 795.

Illinois case law provides that a tort action for exercising rights under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) is a remedy available to unionized employees covered by a collective bargaining agreement. (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280, *cert. denied* (1985), 472 U.S. 1032, 87 L. Ed. 2d 642, 105 S. Ct. 3513, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278.) Our supreme court recently addressed the question whether, in light of *Allis-Chalmers*, section 301 of the LMRA preempted the independent State tort of retaliatory discharge as recognized in *Midgett,* and whether a plaintiff's failure to exhaust grievance procedures provided in a collective bargaining agreement would bar the action.

In *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308, *cert. denied* (1987), ___ U.S. ___, 97 L. Ed. 2d 779, 107 S. Ct. 3248, the court held that claims of retaliatory discharge fall outside the preemptive sphere of section 301. The court explained that, because the tort alleged in *Allis-Chalmers* was a derivative product of the labor contract without which it would not have existed, resolution of the claim was substantially dependent upon interpretation of the terms of the agreement. The tort of retaliatory discharge, in contrast, is rooted in clearly mandated public policy of the State which, regardless of the existence or the absence of a collective bar-

gaining agreement, gives employees and employers certain nonnegotiable rights and imposes nonnegotiable duties and obligations. (115 Ill. 2d at 9.) The defendant argued that the State tort should have been preempted because an interpretation of the "just cause" provision of the collective bargaining agreement was necessary for adjudication; however, the court found that the determination of whether an employee had been discharged in violation of public policy did not turn upon whether the discharge was "just" under a labor agreement. Otherwise, the court declared, State public policy could become a bargaining chip to be altered or waived by the private parties to the agreement. (115 Ill. 2d at 10.) The court emphasized that, even had the labor contract incorporated the rights and obligations of the Workers' Compensation Act and provided a discharge in contravention of it would be one without "just cause," the claims still would not be preempted by section 301. 115 Ill. 2d at 12.

*Gonzalez* also held that a unionized employee need not exhaust the contract grievance procedures prior to filing an action to redress a nonderivative tort claim which is grounded in a violation of important public policy. (115 Ill. 2d at 12-13.) Although recognizing the importance of the role of the arbitrator and the arbitration process, the court noted that the duty to arbitrate was limited to disputes arising under the agreement. Hence, because the claims of retaliatory discharge were not derived from the agreement, the court found that the company could not use plaintiffs' failure to exhaust the grievance procedures as an affirmative defense. 115 Ill. 2d at 15.

■ Notwithstanding our supreme court's decision in *Gonzalez*, we believe that we are required to find that section 301 of the LMRA preempts Illinois law with respect to plaintiff's retaliatory discharge claim in view of the United States Court of Appeals' recent decision in *Lingle v. Norge Division of Magic Chef, Inc.* (S.D. Ill. 1985), 618 F. Supp. 1448, *aff'd* (7th Cir. 1987), 823 F.2d 1031, *cert. granted* (1987), ___ U.S. ___, 98 L. Ed. 2d 185, 108 S. Ct. 226.

*Lingle* affirmed the dismissal of two claims of retaliatory discharge which the plaintiffs alleged were motivated by the exercise of their rights under the Workers' Compensation Act. The Federal District Court for the Southern District of Illinois, relying on *Allis-Chalmers*, found that the claims were "inextricably intertwined" with the collective bargaining agreements covering each plaintiff which prohibited discharge without just cause and thus ruled that they were preempted by section 301. As such, the district court dismissed the actions due to the plaintiffs' failures to exhaust the grievance and arbitration procedures provided by their collective bargaining agree-

ments. *Lingle*, 823 F.2d at 1034-35.

The court of appeals first concluded that claims for retaliatory discharge by employees covered by collective bargaining agreements prohibiting discharge without just cause "are actually claims for wrongful discharge under" the agreement. As such, it found plaintiff's claims arose under Federal law and that their removal to Federal court had been proper. (*Lingle*, 823 F.2d at 1041-42.) The court next concluded that section 301 preemption required that " 'incompatible doctrines of local law must give way to principles of federal labor law.' " (*Lingle*, 823 F.2d at 1042.) Thirdly, the court concluded that plaintiffs' retaliatory discharge claims depended substantially on analysis of the terms of the collective bargaining agreements, since they were seeking redress of a right deriving therefrom, and that, therefore, their claims were preempted by section 301. The court disagreed with plaintiffs that a retaliatory discharge claim, as defined in Illinois, did not expressly require interpretation of collective bargaining agreements and that, therefore, the tort was not "inextricably intertwined" with Federal labor law. It reasoned that analyzing the claim under the State tort before doing so under the collective bargaining agreement would allow States, through the guise of their workers' compensation laws, to "circumvent the arbitration and grievance procedures envisioned by Congress as exclusive." The court next concluded that Congress clearly intended that retaliatory discharge claims be resolved by grievance procedures in collective bargaining agreements; and, as such, that those tort claims are "inextricably intertwined with" such agreements because they require "the same analysis of the facts as would an inquiry under the just cause provisions of the agreements." (*Lingle*, 823 F.2d at 1046.) Finally, the court affirmed the dismissals "as a matter of federal law" because plaintiffs failed to exhaust their remedies under the collective bargaining agreements. *Lingle*, 823 F.2d at 1050.

■ *Lingle* is fundamentally at odds with our supreme court's decision in *Gonzalez*. However, we believe that we must follow *Lingle* inasmuch as Federal court decisions control the interpretation of Federal statutes. (*Boyer v. Atchison, Topeka & Sante Fe Ry. Co.* (1967), 38 Ill. 2d 31, 34, 230 N.E.2d 173, *cert. denied* (1968), 390 U.S. 949, 19 L. Ed. 2d 1140, 88 S. Ct. 1038; *Elgin, Joliet & Eastern Ry. Co. v. Industrial Comm'n* (1956), 9 Ill. 2d 505, 507, 138 N.E.2d 553; *Ernhart v. Elgin, Joliet & Eastern Ry. Co.* (1950), 405 Ill. 577, 582, 92 N.E.2d 96; *Arnold v. Babcock & Wilcox Co.* (1987), 154 Ill. App. 3d 863, 870, 507 N.E.2d 218; *Golden Bear Family Restaurants, Inc. v. Murray* (1986), 144 Ill. App. 3d 616, 620, 494 N.E.2d 581; *Montefe-*

*lice v. Terminal R.R. Association* (1981), 100 Ill. App. 3d 858, 860, 427 N.E.2d 370; *People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 595, 338 N.E.2d 56.) We believe that the determination whether a State law cause of action for retaliatory discharge for filing a worker's compensation claim brought by an employee covered by a collective bargaining agreement is preempted by the LMRA is fundamentally dependent upon a construction of that Federal statute. In such cases, our supreme court has stated that Federal decisions control.

We recognize that two other Illinois appellate courts have decided that *Gonzalez* rather than *Lingle* is controlling (see *Brazinski v. Transport Service, Inc.* (1987), 159 Ill. App. 3d 1061, 513 N.E.2d 76; *Byrd v. Aetna Casualty & Surety Co.* (1987), 152 Ill. App. 3d 292, 504 N.E.2d 216) in this situation. But, we believe those decisions are based on an application of the rule that lower Federal court decisions are not binding on Illinois courts out of the context in which the rule is properly applicable. *Brazinski* cites *People v. Spahr* (1978), 56 Ill. App. 3d 434, 438, 371 N.E.2d 1261, for the proposition that "[w]hile a Federal appeals court's decision is persuasive authority in this court, we are bound by the decision of our State supreme court in the absence of contrary authority by the United States Supreme Court." (159 Ill. App. 3d at 1066.) *Byrd*, which was decided before the Seventh Circuit Court of Appeals decision in *Lingle*, cites *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1057, 452 N.E.2d 804, for the rule that "[d]ecisions of the United States district courts will be given respectful consideration, but will be adopted only when persuasive in their rationale and reasoning." (152 Ill. App. 3d at 300.) *Byrd* also cites *Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 479 N.E.2d 988, for a similar rule.

In *People v. Spahr* (1978), 56 Ill. App. 3d 434, 438, 371 N.E.2d 1261, the court stated:

> "Illinois supreme court decisions are binding on all Illinois courts [citation], but decisions of Federal courts other than United States Supreme Court decisions concerning questions of Federal *statutory* and constitutional law are not binding on Illinois courts. (*People v. O'Neal* (1976), 40 Ill. App. 3d 448, 450, 352 N.E.2d 282, 283.)" (Emphasis added.)

*People v. O'Neal* (1976), 40 Ill. App. 3d 448, 450, 352 N.E.2d 282, *cert. denied* (1977), 431 U.S. 969, 53 L. Ed. 2d 1065, 97 S. Ct. 2929, stated:

> " '[D]ecisions of Federal Courts other than the United States Supreme Court *** are not binding on the courts of this state.'

(*People v. West* (1971), 3 Ill. App. 3d 106, 116, 278 N.E.2d 233, 240.)''

*West* cited *People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121, for the rule quoted in *O'Neal*.

In *Stansberry*, the defendants had argued that search warrants which led to their arrests were void under a Seventh Circuit Court of Appeals decision. Our supreme court, noting that it had taken the position opposite that of the Seventh Circuit, stated:

"The question thus presented is whether the [Federal] case has any binding effect on this court when the issue has not been passed on by the United States Supreme Court. *** [T]he majority [of States favor] the rule that such decisions should have no binding effect until the issue is determined by the Supreme Court. This would appear to be the most logical conclusion, for oftentimes there is a conflict between decisions of the various Federal courts *on constitutional matters* and until finally determined by the United States Supreme Court there can be no definitive ruling by which a State court can be bound. [Citation.]" (Emphasis added.) (47 Ill. 2d at 544.)

The court then noted the conflicting decisions by various Federal courts on the substantive issue before it and stated: "*Under such circumstances* decisions of the lower Federal courts can be held to be no more than persuasive and certainly not binding on State courts." 47 Ill. 2d at 545.

Thus, it is clear that the reference in *Spahr* to "Federal statutory law" is an unwarranted gloss on the rule first stated in *Stansberry*, which limited its refusal to follow lower Federal court decisions to those involving "constitutional matters" because of the divergence of opinion by those courts on such issues. Properly read then, the *Stansberry* rule is not in conflict with the rule, also stated by the supreme court, that Federal court decisions control the interpretation of Federal statutes.

The cases of *Skokie Gold* and *Nandorf*, which *Byrd* cites for the rule that lower Federal court decisions are not binding on Illinois courts, in turn cite to *City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 118, 368 N.E.2d 891, for that rule. Neither *Skokie Gold, Nandorf* nor *Groffman* involved the interpretation of a Federal statute. *Groffman* involved the constitutionality of a City of Chicago ordinance. In disagreeing with a Seventh Circuit Court of Appeals decision in another case that the ordinance was unconstitutional, the appellate court in *Groffman* had cited *West, Stansberry,* and *United States ex*

*rel. Lawrence v. Woods* (7th Cir. 1970), 432 F.2d 1072, *cert. denied* (1971), 402 U.S. 983, 29 L. Ed. 2d 148, 91 S. Ct. 1658, for the rule recited in *Byrd.* (*City of Chicago v. Groffman* (1976), 42 Ill. App. 3d 139, 145, 354 N.E.2d 572.) In restating that same rule, the supreme court in *Groffman* relied on *Stansberry* and *People ex rel. Illinois Federation of Teachers v. Lindberg* (1975), 60 Ill. 2d 266, 326 N.E.2d 749, *cert. denied* (1975), 423 U.S. 839, 46 L. Ed. 2d 58, 96 S. Ct. 67.

*Lindberg* involved a challenge to the constitutionality of a line item veto by former Governor Walker of a State appropriation to certain teachers' pension funds. In rejecting the plaintiff's reliance on a United States First Circuit Court of Appeals decision, the supreme court cited *Stansberry.* (60 Ill. 2d at 277.) Thus, *Lindberg* did not involve the interpretation of a Federal statute but rather, as *Stansberry* and *Groffman* had, "a constitutional matter."

*Lawrence* was a *habeas corpus* proceeding. The court of appeals concluded that the Illinois Supreme Court was not required to release the petitioner on the basis of another court of appeals decision holding the local ordinance under which the petitioner was convicted unconstitutional. The court stated that, because lower Federal courts exercise no appellate jurisdiction over State courts, their decisions are not conclusive on State courts. (*Lawrence,* 432 F.2d 1072.) Prior to so stating, the court examined the position of various States on the issue. From a New Jersey case, it quoted language that lower Federal court decisions did not bind the State's courts " 'on federal constitutional issues.' " From an Iowa case, it quoted language that until the United States Supreme Court " 'has spoken, state courts are not precluded from exercising their own judgment upon questions of federal law.' " (432 F.2d 1072, 1075.) We believe that, to the extent *Lawrence* relied on an Iowa case referring to "federal law" as opposed to "federal constitutional law," it is, at best, questionable authority on which to conclude that the rule that Federal court decisions control the interpretation of Federal statute is no longer viable.

In contrast to the context of criminal "constitutional matters" in which the *Stansberry* rule first arose is the context in which the rule we rely on arose and continues to be applied. *Ernhart v. Elgin, Joliet & Eastern Ry. Co.* (1950), 405 Ill. 577, 92 N.E.2d 96, and *Elgin, Joliet & Eastern Ry. Co. v. Industrial Comm'n* (1956), 9 Ill. 2d 505, 138 N.E.2d 553, involved underlying actions brought in Illinois courts under the Federal Employer's Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1982)). In each case the issue was whether the plaintiff's employer was engaged in interstate commerce at the time of the plaintiff's injuries so as to bring him within the coverage of the Federal

statute. The supreme court stated in *Ernhart*: "We have carefully examined the Federal cases cited, *which we concede are controlling in the interpretation of a Federal act,* \*\*\*." (Emphasis added.) (405 Ill. at 582.) Importantly, the court then examined nine lower Federal court decisions cited by the plaintiff. It then stated in *Elgin, Joliet,* without citing *Ernhart*: "The decisions of the Federal courts are controlling upon our court in the interpretation of a Federal statute." (9 Ill. 2d at 507.) The court then examined two United States Supreme Court cases, *Ernhart* and two other of its earlier cases to decide the issue. In *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, 230 N.E.2d 173, *cert. denied* (1968), 390 U.S. 949, 19 L. Ed. 2d 1140, 88 S. Ct. 1038, an action brought under the Federal Safety Appliance Act (45 U.S.C. §2 (1982)), the supreme court stated: "In construing the Federal Safety Appliance Act, *as with other Federal statutes, we must look to the Federal decisions for its interpretation.*" (Emphasis added.) 38 Ill. 2d at 34.

This rule, established by our supreme court in cases arising under Federal statutes, continues to be applied by Illinois appellate courts in that context. In *Montefelice v. Terminal R.R. Association* (1980), 100 Ill. App. 3d 858, 860, 427 N.E.2d 370, another FELA action, the court cited *Elgin* for the rule and concluded that it was required to follow a decision of the United States Court of Appeals for the Eighth Circuit. More importantly, the rule has also been extended to the context of the Federal preemption of Illinois law. In *Golden Bear Family Restaurants, Inc. v. Murray* (1986), 144 Ill. App. 3d 616, 494 N.E.2d 581, the plaintiff employers contended the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 *et seq.* (1982)) preempted the Illinois Department of Labor's regulation of their employee vacation plans. In disagreeing, the court stated: "We base these conclusions on Federal law because the decisions of the Federal courts are controlling upon our court in the interpretation of a Federal statute." (144 Ill. App. 3d at 619-20.) The court cited to *Elgin, Joliet* and *Montefelice* for the rule and then concluded that the trial court had properly relied on a decision of the United States District Court for the Northern District of Illinois to find no preemption. Lastly, in *Arnold v. Babcock & Wilcox Co.* (1987), 154 Ill. App. 3d 863, 507 N.E.2d 218, an action brought in part under ERISA, the defendant employer contended that the ERISA had superseded State law and that, under governing Federal law, its denial of termination benefits to plaintiffs, its former employees, was not arbitrary and capricious. In response, the plaintiffs relied on several Illinois contract cases. The court stated:

"Plaintiff's arguments based on State law are not well founded 'because the decisions of the Federal courts are controlling *** in the interpretation of a Federal statute.' " (154 Ill. App. 3d at 870, quoting *Golden Bear Family Restaurants, Inc. v. Murray* (1986), 144 Ill. App. 3d 616, 619-20.) After citing *Golden Bear* for the rule, the court relied on several lower Federal court decisions to conclude that defendant's denial of termination benefits had not been arbitrary and capricious.

We believe this analysis reveals that we are bound, at the direction of the Illinois Supreme Court itself, to follow the Seventh Circuit's *Lingle* decision that the Illinois tort of retaliatory discharge is preempted by section 301 of the LMRA. Accordingly, we so hold.

■ Moreover, whether we so hold or hold, alternatively, under *Allis-Chalmers*, that we may treat plaintiff's claim as a section 301 claim, the result would be the same. That is, if we adopt the former view, we lack subject matter jurisdiction and must dismiss the claim *sua sponte*. (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 55 L. Ed. 2d 206, 105 S. Ct. 1904; *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 330, 489 N.E.2d 1367.) If we adopt the latter view, *Lingle* requires us to dismiss the claim as a matter of Federal law due to plaintiff's failure to exhaust the grievance and arbitration procedures provided by the collective bargaining agreement governing his employment with defendant. Additionally, as upon remand the trial court would be bound by the views expressed herein and thus bound to dismiss plaintiff's cause of action, we may dismiss the complaint without remanding the cause. Under Supreme Court Rule 366(a)(5), we may grant any relief that the case may require. (107 Ill. 2d R. 366(a)(5).) Accordingly, this appeal and the complaint for retaliatory discharge underlying it are dismissed.

Appeal and complaint dismissed.

McNAMARA, P.J., and WHITE, J., concur.